| | | |
|---|---|---|
| KAYIE SHAUNE WRIGHT, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| KENNETH E. LASSITER, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on initial review of *pro se* Plaintiff's Complaint, (Doc. No. 1). Plaintiff has filed a Motion to Appoint Counsel, (Doc. No. 3), and a "Motion for Permanent Restraining Order, and Preventive Relief," (Doc. No. 8). Plaintiff is proceeding *in forma pauperis*. (Doc. No. 6).

## I.     BACKGROUND

*Pro se* Plaintiff filed a civil rights suit pursuant to 42 U.S.C. § 1983 while incarcerated at the Alexander Correctional Institution with regards to incidents that allegedly occurred at the Lanesboro and Marion C.I.s as well as Central Prison.[1] He names as Defendants: Director of Prisons Kenneth Lassiter, Regional Director of Western Prisons David Mitchell, Marion C.I. Superintendent Hubert Corpening, the State of North Carolina, DHO Robert T. Barker, Captain Alena Carson, SRG Officer Adam J. Hergenrother, Sergeant Alley Hollingworth, D-Unit Sergeant Teresa Puett, and Dr. High.

Liberally construing the Complaint and accepting the allegations as true, Plaintiff

---

[1] Plaintiff currently resides at the Marion C.I.

1

submitted a grievance on May 12, 2015, against Sergeant Clawson at Lanesboro C.I. about Clawson's actions. Shortly after that, Plaintiff started having more infractions which led to him submitting more grievances.

On September 18, 2015, Plaintiff submitted a grievance due to Zimmerman's language towards him and "purposely missing property." (Doc. No. 1 at 18).

On April 17, 2016, Plaintiff was handcuffed by Clawson in the kitchen where Plaintiffs work station was located, and he was escorted to the restrictive housing cage. Plaintiff was told to exit the cage after officers removed other inmates to the cell blocks. Plaintiff was told to walk in a different direction. Officer Honbarrier grabbed Plaintiff and pushed his face against a glass window and forced Plaintiff to the floor "while Plaintiff was no harm due to the restraints on Plaintiff." (Doc. No. 1 at 18). Officers Sniper, Holder, McClendon, Williamson, Wall, Hudson, Lambert and others carried Plaintiff outside and threw him into a cage. Plaintiff asked for medical assistance, and he was humiliated because other offenders were walking by. Plaintiff informed Captain Aaron about these acts of retaliation and excessive force, and said he wanted to make a statement. A short time later, Plaintiff was escorted in a wheelchair to be seen by Nurse Stewart and he informed her of pain and about the altercation. She refused to assist Plaintiff and insisted that he submit a sick call if the pain continued. Plaintiff was placed into a holding cage and attempted to get the attention of nurses and other officers.

Plaintiff was being escorted to the cell block and force was used "due to an refusal to enter an unsanitary cell" so officers Sniper, Holder, McClendon, Williamson, Wall, Hudson, Lambert and others dragged Plaintiff into the cell after slamming his head against the rail while on the ground. (Doc. No. 1 at 19). Sergeant Hudson forcefully grabbed Plaintiff by the leg shackles and dragged Plaintiff inside the cell, kicked his stomach, and walked out. Inmate Jonnie Allen

witnessed this and wrote a statement on Plaintiff's behalf. On May 3, 2016, Plaintiff filed a grievance regarding the use of excessive force. Sergeant Zimmerman served Plaintiff an infraction, and Plaintiff wrote a statement about how it was retaliation and Zimmerman put the wrong cell number and purposefully changed the report. Plaintiff was found guilty of the disciplinary infraction by William Alfred "without proper due process." (Doc. No. 1 at 19).

Plaintiff received multiple infractions while he was in segregation after submitting grievances.

Plaintiff was assaulted by another inmate on June 29, 2016, while coming from recreation on segregation. Plaintiff refused medical treatment until the shift change, then saw Nurse Boss. (Doc. No. 1 at 20).

Plaintiff wrote a grievance against "case worker inadequate assistance" and, in retaliation, Case Worker Smith had him transferred to Marion C.I. on December 13, 2016. (Doc. No. 1 at 20). At Marion C.I., Plaintiff was exposed to "harassment, threats, missing property, excessive force, mail tampering, denial of visitation, and etc." (Doc. No. 1 at 20).

Plaintiff was refused his sneakers and they were placed into storage and documented by Officer Lee on April 17, 2016. Plaintiff attempted to notify the unit manager of D-Unit with a grievance about his shoes but it was denied.

On March 10, 2017, Sergeant Puett took personal property from Plaintiff while he was at court including hygiene items, religious items, and legal materials. She stored the items and documented them on a property list. Officer Brown came to give the property back "but only radio with broken headphones and the rest was all missing, Plaintiff refuse to sign." (Doc. No. 1 at 20). Plaintiff attempted to place multiple grievances but he did not receive any copy of acceptance.

On April 5, 2017, Plaintiff held the trap to speak to Officer in Charge A. Carson due to

Puett, J. Grant, Sergeant Jenkins, and others, who were harassing Plaintiff and placing infractions on him. During this attempt, Lieutenant Richards "construct the distraction team to mace Plaintiff cell before Plaintiff could submit to restraints." (Doc. No. 1 at 20-21). An officer who was not wearing a name tag shoved a stick into Plaintiff's privates causing lost breath and pain. Plaintiff then submitted to restraints "after gathered breath and attempt for water due to officers turning all water off minutes before." (Doc. No. 1 at 21). Plaintiff was placed in full restraints while exiting the cell. Officers purposefully bent Plaintiff's wrist. Plaintiff complaint but they continued purposefully. Officers then forcefully threw Plaintiff to the floor and shocked him with electronic shield by placing it on Plaintiff's head. Plaintiff refused to take a d-con shower. They placed him in the shower with full restraints with hands behind his back while Officer Kidd recorded it. There was no shower mat in the shower. Plaintiff did not receive adequate medical attention and Nurse Stewart told him that the use of the electric shield was not documented.

Plaintiff accumulated five infractions but never had the opportunity to write any statement or call witnesses. DHO Barker purposefully found Plaintiff guilty on all infractions "when was informed on such denial." (Doc. No. 1 at 21).

On June 5, 2017, Officer Hergenrother refused to appeal the decision on a religious item that was denied by SRG and mailroom staff Brookshire.

On June 7, 2017, Plaintiff was denied a food package box without any notification why it was denied.

On June 7, 2017, Plaintiff was assaulted and excessive force was used with the lack of medical assistance by Nurse Welch, Officers Guzman, Kizer, Lyons, Tilley, and other staff. They assaulted Plaintiff by pulling his hair and kicking him while he was on the ground, and maced him three times even after he was in restraints. (Doc. No. 1 at 22).

Plaintiff wrote numerous letters to Lassiter to appeal the infractions and inform him of Plaintiff's predicament due to mail tampering by SRG officers. The letters were refused to leave the facility which left him to inform his family members.

Plaintiff wrote a letter to family member and sealed it and gave it to an officer to place in the mailbox. The next day Plaintiff received an infraction for gang activity "due to hand drawing an UCC form and letting family know of what and how staff are doing to plaintiff." (Doc. No. 1 at 22).

Plaintiff spoke to the Regional Director, Superintendents Mitchell and Corpeining on August 3, 2017, and informed them of the "retaliation and more." (Doc. No. 1 at 22). Plaintiff gave Mitchell a 4-page letter explaining how and what staff were doing. Before that, Plaintiff also talked to Captain Mimms at Lanesboro with E-unit managers Boysworth and Hamilton present.

On April 19, 2017, Plaintiff was transferred to Central Prison for a medical trip. He informed multiple staff that he is seeking safety and he is in great danger at the institution. Plaintiff claimed suicide to speak to a psychiatrist, but the psychiatrist refused to assist him, stating "you will not be staying here" and walked away after Marion C.I. staff member Franklin stated "he's only playing and used multible [sic] forces on me." (Doc. No. 1 at 22). While on the transfer van from Central Prison, "staff" continued to shock Plaintiff with the electronic box on Plaintiff's leg. (Doc. No. 1 at 23).

Plaintiff was denied visitation and phone calls since entering the facility and has had no family visits, only attorney visits. Plaintiff's lawyer was forced to walk through the institution on July 17, 2017, while other offenders have attorney visits in attorney rooms.

Nurse Williams denied Plaintiff any assistance on use of force that led to wrist bleeding on July 5, 2017. Sergeant Stiles took pictures.

"Medical and distraction team force blood from Plaintiff while assistance superintendent Donald Watkins stands at the cell door calling Plaintiff racial remarks, such as: Nigger boy, cornbread eater and etc. Plaintiff and Watkins both made disputes until Watkins walked off, before stating 'I'll make sure your life be a living hell here.'" (Doc. No. 1 at 23). On December 22, 2016, Plaintiff was on "S.I.P." and was removed from his cell while in suicide clothing then walked through the institution to Watkin's office. Riles and Lieutenant were present. Watkins repeated his statement and later that day, Plaintiff was forced to sign to be removed from his religious diet. (Doc. No. 1 at 23).

On June 8, 9, and 10, 2017, Plaintiff was forced to do recreation in full restraints out of retaliation and to humiliate him. Plaintiff was force to take a shower in full restraints on June 10, 2017, and slipped, causing immediate medical attention "which medical staff allowed and other refused to treat me, then force me back into my cell that was located on E-Unit 4CZ, where Plaintiff continued to ask staff for medical attention. Sergeant Bird, Officers Redford, Harris, Poteat, and Edge was witnesses and informed the institution of a 'code-blue' when falling into the shower." (Doc. No. 1 at 24). Plaintiff "is anonymously being skip and denied recreation upon shift 1B rotation." (Doc. No. 1 at 24).

Plaintiff is forced to be around Newton, Turner, and Ambergy who filed criminal offenses against him.

On October 30, 2017, Plaintiff was transferred to Alexander C.I. and placed in restrictive housing for physical therapy and was refused hygiene products. He was forced to do physical therapy in full restraints. Plaintiff notified the institution of fear of safety through grievances about Marion C.I. but "staff refused to assist the complaint." (Doc. No. 1 at 24). Plaintiff informed Beaver on multiple occasions, and Dye during rounds. Plaintiff was threatened on January 12,

2018 "that force will be used if I do not submit to transfer back to Marion Corr. Inst." (Doc. No. 1 at 24).

Plaintiff entered Marion C.I. and was told he could not have hygiene products, pictures, books, legal mail, regular mail, and religious items due to entering a Rehabilitation Diversion Unit ("RDU") program. Plaintiff refused to sign papers saying he is willing to do the program. He submitted multiple grievances regarding past conflicts with unit manager on E-unit where he was purposely sent back when entering Marion C.I. and the grievances were purposefully denied. (Doc. No. 1 at 25).

Plaintiff was refused a notary on March 2, 2018, by Amy Ward without any specific reason. When Plaintiff exited his cell for recreation on March 3, 2018, and was placed in the cage, Plaintiff asked to speak to the officer in charge, Carson, to inform her of the denial of a notary. Plaintiff was retaliated against by taking property, an infraction where Plaintiff had no opportunity to write a statement or call witnesses at the hearing, and was denied the opportunity to eat lunch and dinner by Sergeant Kiser, and Officers Marsh, Davis, Nanney, and Hendley. On the next shift, Plaintiff spoke to Sergeant Brown and Lieutenant Banks about the recent actions of staff and denial of a notary. Plaintiff submitted a grievance about the retaliation that was rejected.

Plaintiff was sent to the McDowell court on January 16, 2018, with transfer officer Gilliand. The judge decided Plaintiff should be transferred away from Marion C.I. and informed the institution. "Plaintiff is denied any response sent for the transfer as well as no copy of transfer request sent back to suppress such information." (Doc. No. 1 at 25).

Plaintiff was informed by family that the mail they sent is being opened and sealed again with tape. Plaintiff sent requests to SGR and mailroom staff to stop removing items from mail where he was never served a notification to leave mail open for review.

On March 27, 2018, Plaintiff was not allowed to carry any legal documentation to a scheduled court date by 1B rotation officers. Plaintiff talked to Lieutenant McDaniel and was told he would have to give up his law dictionary by choice or force. Plaintiff gave the dictionary to McDaniel. (Doc. No. 1 at 26).

In court, Plaintiff "was informed a second time that he should be transfer from the facility by McDowell County Courthouse Judge." (Doc. No. 1 at 26). When Plaintiff returned to Marion from court, he was entering his assigned cell, Plaintiff had property, mail, and other items taken from him for no cause, out of spite from 1B rotation. He was refused a hot meal; a cold tray had been left and tampered with on the floor. Plaintiff gave the tray back to Hendley while Hamby, Davis and another officer were present. Plaintiff requested the officer in charge but was refused. When officer Davis served Plaintiff a rejection of mail by E-unit manager out of retaliation, and Plaintiff appealed. Plaintiff never received a property sheet for his items that officers took out of his cell. Plaintiff wrote an inmate grievance resolution board to gather missing grievances to attach to the complaint but he was denied copies. Plaintiff continues to be denied copies of grievance responses by E-Unit managers and the institution every time he appeals a grievance decision. Plaintiff tried many other remedies and was not given proper assistance.

Plaintiff's attempts to get help through other legal companies that do civil claims were denied at all times by letters. (Doc. No. 1 at 27).

Plaintiff continued to place mental health requests to be seen for depression and other issues by Dr. Murphy.Plaintiff continues to be seen for "medical pain."

Plaintiff's published status is "regular population" but he is confined and treated as restrictive housing.

Plaintiff filed multiple sexual harassments against Ambergy and Roper, but the "Roper

harassment never gotten process for anonymous reason(s)." (Doc. No. 1 at 27).

Plaintiff claims the following injuries: neck, back, and foot pain, irreparable mental/emotional pain and suffering, "modes disorders," eating disorders, lack of trust, "denationalization," aggressive behavior, stress, humiliation, personality disorder, disorganized speech, grief, sexual disfunction, defamation of character, pain and suffering, sleep difficulty, false imprisonment, "post traumatic stress/slave syndrome," schizophrenia, theft of personal property, mail tampering, Stockholm syndrome, fear for his health and safety, inadequate health care, inadequate mental evaluation. (Doc. No. 1 at 5).

He seeks declaratory judgment, injunctive relief including immediate transfer to Central Prison and discontinuation of the RDU program, compensatory, punitive, and liquidated damages, a jury trial, costs, any additional relief the Court deems just, proper, and equitable.

## II.    STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of

Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

## III. DISCUSSION[2]

### (1) Parties

#### (a) Individuals Not Named as Defendants

The Federal Rules of Civil Procedure provide that, "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a); see Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption

---

[2] The allegations are often lacking in factual context and are difficult to understand. Extraneous, conclusory, and meaningless allegations have been omitted.

and arrange for service of process."). Although *pro se* litigants are entitled to have their pleadings liberally construed, <u>Haines</u>, 404 U.S. at 520, "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants," <u>Pliler v. Ford</u>, 542 U.S. 225 (2004).

The body of the Complaint contains allegations against individuals who are not named as defendants in the caption as required by Rule 10(a). This failure renders Plaintiff's allegations against them nullities. <u>See</u>, <u>e.g.</u>, <u>Londeree v. Crutchfield Corp.</u>, 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served). Accordingly, the allegations against unnamed individuals will be dismissed without prejudice.

### (b) No Allegations

The Federal Rules of Civil Procedure require a short and plain statement of the claim. Fed. R. Civ. P. 8(a)(2). Conclusory allegations, unsupported by specific allegations of material fact are not sufficient. <u>Simpson v. Welch</u>, 900 F.2d 33, 35 (4th Cir. 1990). A pleader must allege facts, directly or indirectly, that support each element of the claim. <u>Dickson v. Microsoft Corp.</u>, 309 F.3d 193, 201-02 (4th Cir. 2002).

Plaintiff makes no allegations whatsoever against Sergeant Alley Hollingworth and Dr. High. Therefore, they will be dismissed from this action for failure to state a claim.

### (c) State of North Carolina

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of Another State, or by Citizens of any Foreign State." U.S. Const. Amend. 11. Neither a State nor its officials acting in the official capacities are "persons" under § 1983. <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989). Thus, civil rights suits

against a state, its agencies, and its officials sued in their official capacities for damages are barred absent a waiver by the State or a valid congressional override. <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985).

Plaintiff's claims against the State of North Carolina are barred by sovereign immunity and therefore will be dismissed with prejudice.

**(d)** <u>**Supervisors**</u>

A state official can be in a § 1983 suit in three ways: in his personal capacity, his official capacity, or in a more limited way, his supervisory capacity. <u>King v. Rubenstein</u>, 825 F.3d 206, 223–24 (4th Cir. 2016). For personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." <u>Graham</u>, 473 U.S. at 166. In an official-capacity suit, however, "[m]ore is required:" the suit is "treated as a suit against the entity," which must then be a "'moving force' behind the deprivation," <u>id.</u> (quoting <u>Polk County v. Dodson</u>, 454 U.S. 312, 326 (1981)); thus, the entity's "'policy or custom' must have played a part in the violation of federal law," <u>id.</u> (quoting <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 694 (1978)). Meanwhile, a supervisor can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury." <u>Shaw v. Stroud</u>, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

Plaintiff has named several supervisory officials as Defendants, including Director of Prisons Kenneth Lassiter in his official capacity, and Regional Director David Mitchell, and Marion C.I. Superintendent Hubert Corpening, in their official and individual capacities.

He alleges that he wrote numerous letters to Lassiter to appeal the infractions and inform him of mail tampering by SRG officers. However, the letters never left the facility. Therefore, Plaintiff has failed to allege that Lassiter was personally involved in the alleged constitutional violations. Nor has he alleged that Lassiter had a policy or custom that led to the alleged violations, or knew that his subordinates engaged in conduct that posed a pervasive risk of harm and ignored that risk.

Plaintiff alleges that he spoke to the regional director and Corpening on August 3, 2017, to inform them of the "retaliation and more." (Doc. No. 1 at 22). Plaintiff gave Mitchell a four-page letter explaining how and what staff were doing. These vague allegations are insufficient to state a plausible claim for relief against either Mitchell or Corpening based on their own conduct, their customs or policies, or the actions of their supervisees.

Therefore, Plaintiff's claims against the supervisory Defendants are insufficient to proceed and will be dismissed.

### (2) Cruel and Unusual Punishment

The Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The Constitution "does not mandate comfortable prisons, … but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). Thus, prison official must provide sentenced prisoners with adequate food, clothing, shelter, and medical care, and "take reasonable measures to guarantee the[ir] safety…." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); see Farmer, 511 U.S. at 832-

34. Inmates' claims that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir.1987). To establish the imposition of cruel and unusual punishment, a prisoner must prove two elements: (1) "the deprivation of [a] basic human need was objectively sufficiently serious," and (2) "subjectively the officials act[ed] with a sufficiently culpable state of mind." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993) (quotation omitted).

**(a) Excessive Force**

Prison officials may not use excessive physical force against prisoners. See Hudson v. McMillian, 503 U.S. 1 (1992). "[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Id. at 4; see Wilkins v. Gaddy, 559 U.S. 34, 34 (2010). The "core judicial inquiry," is not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated ... whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Id. at 9, 13–14.

The Fourth Circuit addresses a failure to intervene claim as a theory of "bystander liability" wherein there is "an omission to act...coupled with a duty to act." Randall v. Prince George's Cnty., 302 F.3d 188, 202 (4th Cir. 2002). A "bystander officer" could be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2)

has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Id. at 204. However, if no excessive force is applied by the fellow officer, the officer witnessing the conduct "cannot be held liable under bystander liability for a failure to intervene." Howie v. Prince George's Cnty., 2009 WL 2426018 at *6 (D. Md. Aug. 5, 2009); see also Jarvis v. Securitas Sec. Servs. USA, 2012 WL 527597 (D. Md. Feb. 16, 2012).

A verbal threat combined with action apparently designed to carry out that threat may state and Eighth Amendment claim. Hudspeth v. Figgins, 584 F.2d 1345, 1348 (4th Cir. 1978). However, "[v]erbal abuse alone does not violate a constitutional right." Moody v. Grove, 885 F.2d 865, 865 (4th Cir. 1989) (unpublished) (citing Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)).

Plaintiff alleges that he experienced the excessive use of force on occasions including April 17, 2016, April 5, 2017, and June 7, 2017. He also appears to allege that he told multiple staff members at Central Prison that he was in danger on April 19, 2017, but they failed to protect him. He also complains that several Defendants harassed and threatened him.

None of the individuals that Plaintiff implicates in the use of excessive force are named as Defendants in this action and several more are unidentified. See Londeree, 68 F.Supp.2d at 718 (allegations against parties not named as defendants are nullities). Insofar as Plaintiff can set forth sufficient excessive force allegations against any of these individuals, service is presently impossible and these claims will be dismissed at this time.[3] He has also failed to identify the

---

[3] John Doe suits are permissible only against "real, but unidentified, defendants." Schiff v. Kennedy, 691 F.2d 196, 197 (4th Cir. 1982). The designation of a John Doe defendant "is generally not favored in federal courts; it is appropriate only when the identity of the alleged defendant is not known at the time the complaint is filed and the plaintiff is likely to be able to identify the defendant after further discovery." Njoku v. Unknown Special Unit Staff, 217 F.3d 840, 840 (4th Cir. 2000). "[I]f it does not appear that the true identity of an unnamed party can be discovered through discovery or through intervention by the court, the court could dismiss the action without prejudice." Schiff, 691 F.2d at 197-98 (because it appeared that John Doe was an actual person, it was error for the district court to conclude that, under appropriate circumstances, this type of case would not be permitted).

Central Prison staff who allegedly failed to protect him from further violence. Plaintiff's claims that various individuals threatened and harassed him are insufficient to proceed. See Moody, 885 F.2d at 865.

Therefore, Plaintiff's excessive force claims will be dismissed without prejudice.

**(b) Conditions of Confinement**

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission ... result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298 (citing Rhodes, 452 U.S. at 347).

Plaintiff alleges that he was: forced to do recreation in full restraints; forced to take a shower in full restraints; placed in restrictive housing; was forced to do physical therapy in full restraints; was refused hygiene products on several occasions; was refused pictures, books, legal mail, regular mail, and religious items due to entering a Rehabilitation Diversion Unit ("RDU") program; was refused a notary; was being skipped for recreation on shift 1B rotation; was denied the opportunity to eat lunch and dinner on one occasion; and was given a cold meal tray that had tampered with on the floor.

None of these conditions are adequately serious to rise to the level of a constitutional deprivation. Therefore, Plaintiff's conditions of confinement claims will be dismissed.

**(c) Deliberate Indifference Medical**

To state a *prima facie* case of deliberate indifference to a serious medical need, a plaintiff

must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifferent to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* Farmer, 511 U.S. at 825. However, mere negligence or malpractice does not violate the Eighth Amendment. Miltier, 896 F.2d at 852.

Plaintiff alleges that he was denied medical assistance following the April 17, 2016, incident with officers; following a June 29, 2016, assault by another inmate; following the April 5, 2017, incident with officers; following the June 7, 2017, incident with officers; on April 19, 2017, when he sought help from a Central Prison psychiatrist; on July 5, 2017, when his wrist was bleeding; by forcing him to have a blood test; after he fell in the shower on June 10, 2017; and when he put in mental health requests to be seen for depression and other issues.

None of the individuals that the Plaintiff implicates as denying him adequate medical care are Defendants in this action, and several others are unidentified. Assuming any of these claims would be sufficient to proceed, service is presently impossible and these claims will be dismissed at this time. See Schiff, 691 F.2d at 197; Londeree, 68 F.Supp.2d at 718.

Therefore, Plaintiff's claims for the deliberate indifference to a serious medical need are dismissed without prejudice.

**(2)**     **Retaliation**

Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth, 584 F.2d at 1347. To succeed on such a claim, a plaintiff must first allege that "the retaliatory act was taken in response to the exercise of a constitutionally protected right...." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Thereafter, a plaintiff must demonstrate that he suffered some adverse impact or actual injury. See American Civil Liberties Un. of Md., Inc. v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993) (citing Huang v. Board of Governors of Univ. of North Carolina, 902 F.2d 1134, 1140 (4th Cir. 1990)). In addition, a plaintiff must come forward with specific evidence "establish[ing] that but for the retaliatory motive the complained of incident[s] ... would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir.1995); accord Ponchik v. Bogan, 929 F.2d 419, 420 (8th Cir.1991) (plaintiff must show that action would not have occurred "but for" the alleged reprisal); Collinson v. Gott, 895 F.2d 994, 1002 (4th Cir. 1990) (Phillips, J., concurring); McDonald v. Hall, 610 F.2d 16, 18–19 (1st Cir.1979). In the prison context, such claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

Plaintiff alleges that he was: charged with multiple disciplinary violations; placed in segregation; subjected to excessive force; denied medical care; subjected to mail tampering; refused a notary; deprived of his property; and was transferred to different facilities after he started filing grievances.

None of the individuals that the Plaintiff implicates as retaliating against him are Defendants in this action, and several others are unidentified. Assuming any of these claims would

be sufficient to proceed, service is presently impossible and these claims will be dismissed at this time. See Schiff, 691 F.2d at 197; Londeree, 68 F.Supp.2d at 718.

Therefore, Plaintiff's claims for retaliation are dismissed without prejudice.

**(3)**     **Due Process**

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty that was accomplished by state action. Tigrett v. The Rector and Visitors of the Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988). "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." Stone, 855 F.2d at 172.

    **(a)** **Discipline**

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citing Morrissey v. Brewer, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits or solitary confinement, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the

opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker.  See <u>Wolff</u>, 418 U.S. at 564-71.  There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel.  See <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 322 (1976); <u>Brown v. Braxton</u>, 373 F.3d 501, 505-06 (4th Cir. 2004).  As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied.  See <u>Baxter</u>, 425 U.S. at 323 n.5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence."  <u>Superintendent, Mass. Corr. Inst. v. Hill</u>, 472 U.S. 445, 455 (1985).  Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact.  See <u>Kelly v. Cooper</u>, 502 F. Supp. 1371, 1376 (E.D. Va. 1980).  The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious.  See <u>Hill</u>, 472 U.S. at 456; <u>see also</u> <u>Baker v. Lyles</u>, 904 F.2d 925, 933 (4th Cir. 1990).  As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.  A claim for declaratory relief and money damages based on allegations of deceit and bias on the part of state officials involved in disciplinary proceedings that necessarily imply the invalidity of the punishment imposed is not cognizable under § 1983. <u>Edwards v. Balisok</u>, 520 U.S. 641 (1997).

Plaintiff alleges that he was found guilty of a disciplinary infraction on May 3, 2016, "without proper due process," filed several grievances that were never answered or were rejected, was not provided copies of grievances responses, and grievances at Marion C.I. were purposefully denied. (Doc. No. 1 at 19). He also alleges that he accumulated five infractions but never had the opportunity to write any statement or call witnesses, and that Defendant Barker purposefully found Plaintiff guilty on all infractions "when was informed on such denial." (Doc. No. 1 at 21).

The only named Defendant in this action against whom Plaintiff makes grievance-related allegations is Disciplinary Hearing Officer Barker. Plaintiff's allegation that he was not permitted to write any statement or call witnesses states a plausible due process claim. However, the claim that Barker intentionally found him guilty of the disciplinary infraction is not cognizable. See Edwards, 520 U.S. at 641. Plaintiff's other allegations address individuals who are not Defendants in this action, and several others are unidentified. Assuming any of these claims would be sufficient to proceed, service is presently impossible and these claims will be dismissed at this time. See Schiff, 691 F.2d at 197; Londeree, 68 F.Supp.2d at 718.

Therefore, Plaintiff's due process claim addressing prison discipline will proceed against **Defendant Barker** and the remaining claims will be dismissed.

### (b) <u>Property</u>

Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986)). However, post-deprivation remedies do not satisfy the due process requirement where the deprivation complained of is effected pursuant to an established state procedure rather than a random, unauthorized action. Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982).

Under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act. Gallimore v. Sink, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975). North Carolina's post-deprivation remedies are adequate. N.C. Gen. Stat. § 143-291; see Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due

process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner).

Plaintiff alleges that he was deprived of property, including shoes, a book, and hygiene products on numerous occasions. He alleges that, on March 10, 2017, Sergeant Puett took personal property from Plaintiff while he was at court including hygiene items, religious items, and legal materials. She stored the items and documented them on a property list. When an officer came to give the property back "but only radio with broken headphones and the rest was all missing, Plaintiff refuse to sign." (Doc. No. 1 at 20).

The only incident addressing a named Defendant is the March 10 incident with Sergeant Puett. However, it appears that the loss or damage to his property was random and unauthorized rather than the result of an established state procedure. Adequate post-deprivation remedies exist for Plaintiff's alleged property loss, so there is no legal theory which would support this claim. See, e.g., Smith v. Ledford, 2006 WL 1431666 at *2 (W.D.N.C. May 22, 2006), aff'd, 203 Fed. Appx. 484 (4th Cir. 2006) (dismissing plaintiff's claim that jail administrator confiscated his personal property upon his departure from the jail and refused to return it, because plaintiff had an adequate post-deprivation remedy for conversion).

Plaintiff's other allegations address individuals who are not Defendants in this action, and several others are unidentified. Assuming any of these claims would be sufficient to proceed, service is presently impossible and these claims will be dismissed at this time. See Schiff, 691 F.2d at 197; Londeree, 68 F.Supp.2d at 718.

Therefore, Plaintiff's property claim will be dismissed.

**(c) Classification & Housing**

A change in the conditions of a prisoner's confinement that does not exceed the scope of

the original sentence only gives rise to a federally protected liberty interest if it imposes atypical and significant hardship in relation to the ordinary incidents of prison life. <u>Sandin v. Conner</u>, 515 U.S. 472 (1995).

Plaintiff alleges that he was placed in an RDU program against his wishes, was forced to be near officers who filed criminal offenses against him, was not transferred out of Marion C.I. pursuant to a McDowell County judge's instructions, and has "regular population" status even though he is confined and treated as though he is on restrictive housing.

Plaintiff's allegations address individuals who are not Defendants in this action, and several others are unidentified. Assuming any of these claims would be sufficient to proceed, service is presently impossible and these claims will be dismissed at this time. <u>See</u> <u>Schiff</u>, 691 F.2d at 197; <u>Londeree</u>, 68 F.Supp.2d at 718. Moreover, he has failed to adequately allege that he had a federally protected liberty interest that was violated by any Defendant.

Plaintiff's classification and housing claims are therefore dismissed.

**(d)**     <u>**Grievances**</u>

"[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."  <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994).

Plaintiff complains that various grievances were rejected, denied, or ignored, and that he was not provided copies of grievance responses.

Plaintiff has no constitutional right to the prison grievance procedure, and therefore, he is unable to state a due process claim with regards to any alleged irregularity or violation of the grievance procedure.

Therefore, Plaintiff's grievance-related due process claims are dismissed.

**(4)**     <u>First Amendment</u>

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech…." U.S. Const. Amend I. The First Amendment applies to the states through the Fourteenth Amendment. <u>See</u> <u>Everson v. Bd. of Educ.</u>, 330 U.S. 1, 15 (1947). A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974); <u>Pittman v. Hutto</u>, 594 F.2d 407, 410 (4th Cir. 1979). When a prison restriction infringes upon an inmate's First Amendment rights, the alleged infringement "must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." <u>Bell v. Wolfish</u>, 441 U.S. 520, 547 (1979) (citing <u>Jones v. N.C. Prisoners' Labor Union</u>, 433 U.S. 119, 129 (1977)).

**(a)**     <u>Religion</u>

For government conduct to survive scrutiny under the Establishment Clause, "(1) it must have a secular purpose; (2) its principal or primary effect must neither advance nor inhibit religion; and (3) it must not foster an excessive government entanglement with religion." <u>Buxton v. Kurtinitis</u>, 862 F.3d 423, 432 (4th Cir. 2017) (citing <u>Lemon v. Kurtzman</u>, 403 U.S. 602, 612–13 (1971)); <u>see also</u> <u>Madison v. Riter</u>, 355 F.3d 310, 316 (4th Cir. 2003). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. <u>Hernandez v. C.I.R.</u>, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 349 (1987) (quoting <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987)). In deciding whether a

defendant's actions can be sustained as reasonably related to legitimate penological interests, the court must consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives exist which accommodate the right and satisfy the penological interest. See Turner, 482 U.S. at 89-90.

Plaintiff alleges that his religious items were confiscated on various occasions. Specifically, on March 10, 2017, Sergeant Puett took personal property from Plaintiff while he was at court including hygiene items, religious items, and legal materials, which were stored and documented on a property list and later returned. (Doc. No. 1 at 20). On June 5, 2017, Officer Hergenrother refused to appeal the decision on a religious item that was denied by SRG and mailroom staff Brookshire. On December 22, 2016, Plaintiff was forced to sign to be removed from his religious diet. (Doc. No. 1 at 23). When Plaintiff entered Marion C.I., he was not permitted to have religious items in the RDU program.

Plaintiff's vague and conclusory allegations fail to establish that he had a sincerely held religious believe that was substantially burdened by Defendants Puett and Hergenrother's actions. Plaintiff's other religious-based allegations are likewise insufficient and address individuals who are either unidentified or are not named as Defendants in this action. See Schiff, 691 F.2d at 197; Londeree, 68 F.Supp.2d at 718.

Therefore, Plaintiff's First Amendment religion claims are dismissed.

**(b)** **Mail**

As a general rule, prisoners have a constitutionally protected interest in their incoming and

outgoing mail correspondence. Kaufman v. McCaughtry, 419 F.3d 678, 685 (7th Cir.2005) (citing Rowe v. Shake, 196 F.3d 778, 782 (7th Cir. 1999) (citations omitted)). Persons outside of prison also have an interest in corresponding with prison inmates. See Thornburgh v. Abbott, 490 U.S. 401, 408 (1989). Prison officials may, however, impose restrictions on prisoner correspondence if those restrictions are "reasonably related to legitimate penological interests." Turner, 482 U.S. at 89. When evaluating the constitutionality of prison regulations, courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979) (citations omitted).

Plaintiff complains that: on June 5, 2017, Officer Hergenrother refused to appeal the decision on a religious item that was denied by SRG and mailroom staff; on June 7, 2017, he was denied a food package box without any notification why it was denied; he received an infraction for gang activity due to the content of a sealed letter he wrote to a family member regarding a UCC form and "what and how staff are doing to plaintiff," (Doc. No. 1 at 22), and Plaintiff was informed by family that the mail they sent is being opened and sealed again with tape. Plaintiff sent requests to SGR and mailroom staff to stop removing items from mail where he was never served a notification to leave mail open for review.

Plaintiff's vague and conclusory allegations fail to state a plausible claim for interfering with the mail because restrictions such as opening and reviewing mail for contraband and gang content are reasonably related to legitimate penological interests. Moreover, the majority of these allegations are not attributed to any named Defendant. See Schiff, 691 F.2d at 197; Londeree, 68 F.Supp.2d at 718.

Therefore, Plaintiff's due process claims relating to his mail are dismissed.

**(5)** **Access to Courts**

Inmates have a constitutional right to a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" which a state may not abridge or impair. Bounds v. Smith, 430 U.S. 817, 821 (1977); Hudspeth, 584 F.2d at 1347. To make out a *prima facie* case of denial of access to the courts, the inmate cannot rely on conclusory allegations; instead, he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996). The injury requirement is not satisfied by any type of frustrated legal claim; the prisoner must demonstrate that his nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded. See Lewis v. Casey, 518 U.S. 343, 353 (1996). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Casey, 518 U.S. at 355.

Plaintiff alleges that: on March 10, 2017, Sergeant Puett took legal materials from him; he was not allowed to have legal mail while in the RDU at Marion C.I.; was not allowed to carry any legal documentation or a law dictionary to a court date on March 27, 2018; he was unable to obtain legal help from "legal companies that do civil claims," (Doc. No. 1 at 27); and he was refused a notarty on March 2, 2018, of which he informed Captain Carson.

Plaintiff's allegations that Defendants Puett and Carson deprived him of legal materials and failed to act after he was denied a notary are insufficient because he does not allege that either of these incidents resulted in actual injury to a non-frivolous post-conviction or civil rights case. The remainder of his claims do not address any named Defendant and are too vague and conclusory to state a claim for denial of access to the courts. See Schiff, 691 F.2d at 197; Londeree, 68

F.Supp.2d at 718.

Therefore, Plaintiff's claim that he was denied access to the courts is dismissed.

## V.      MOTION TO APPOINT COUNSEL

There is no absolute right to the appointment of counsel in civil actions such as this one. Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel. <u>Miller v. Simmons</u>, 814 F.2d 962, 966 (4th Cir. 1987).

Plaintiff argues that he cannot afford counsel, his imprisonment will greatly limit his ability to litigate, the issues involved are complex and require significant research and investigation, Plaintiff has limited access to the law library and limited knowledge of the law, a trial will likely involve conflicting testimony which could would be able to better present, and Plaintiff has made repeated attempts to obtain a lawyer.

This case does not present exceptional circumstances that justify appointment of counsel and the Motion will be denied.

## VI.      MOTION FOR "PERMANENT RESTRAINING ORDER"

In his "Motion for Permanent Restraining Order, and Preventive Relief," (Doc. No. 8), Plaintiff argues that he should be transferred to Central Prison or released from DPS custody to prevent any future retaliation or intimidation from filing this suit, and will ensure his safety, wellbeing, and ability to enroll in educational courses.

A preliminary injunction is an extraordinary remedy afforded before trial at the discretion of the district court. <u>Pashby v. Delia</u>, 709 F.3d 307, 319 (4th Cir. 2013). It is an extraordinary remedy that is never awarded as of right. <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 24 (2008). In each case, courts "must balance the competing claims of injury and must consider the

effect on each party of the granting or withholding of the requested relief." <u>Amoco Prod. Co. v.</u> <u>Village of Gambell</u>, 480 U.S. 531, 542 (1987). "[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." <u>Winter</u>, 555 U.S. at 24. To obtain a preliminary injunction, a plaintiff must establish (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. <u>Id.</u> at 20; <u>Di Biase v. SPX Corp.</u>, 872 F.3d 224, 229 (4th Cir. 2017).

Plaintiff has failed to establish that he will succeed on the merits of his case, that the balance of equities tip in his favor, or that an injunction is in the public interest. In short, his motion for temporary injunctive relief is severely deficient and will be denied.

## VII.    CONCLUSION

For the reasons stated herein, the Complaint is sufficient to proceed against Defendant Barker for the denial of due process in a prison disciplinary proceeding. The State of North Carolina is dismissed with prejudice under sovereign immunity. The remaining Defendants and claims are dismissed for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff may file a superseding Amended Complaint within 14 days in which he may attempt to add parties and cure the deficiencies identified in this Order.

**IT IS, THEREFORE, ORDERED** that:

1. The due process claim against Defendant Barker survives initial review under 28 U.S.C. § 1915.

2. The State of North Carolina is dismissed with prejudice based on sovereign immunity.

3. The remaining claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

4. Plaintiff shall have 14 days in which to file a superseding Amended Complaint in accordance with this Order and all applicable rules and procedures. If Plaintiff fails to file an Amend Complaint within the time limit set by the Court, this action will proceed on the original Complaint, (Doc. No. 1).

5. The Clerk is directed to mail a copy of the Complaint, (Doc. No. 1), and a new Section 1983 complaint form to Plaintiff.

6. Plaintiff's Motion to Appoint Counsel, (Doc. No. 3), is **DENIED**.

7. Plaintiff's "Motion for Permanent Restraining Order, and Preventive Relief," (Doc. No. 8), is **DENIED.**

8. **IT IS FURTHER ORDERED THAT** the Clerk is directed to commence the procedure for waiver of service as set forth in Local Rule 4.3 for Defendant **Barker** who is a current or former employee of NC DPS.

Signed: August 13, 2018

Frank D. Whitney
Chief United States District Judge