UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:18-cv-90-FDW

| | | |
|---|---|---|
| KAYIE SHAUNE WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| KENNETH E. LASSITER, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** is before the Court on initial review of *pro se* Plaintiff's Amended

Complaint, (Doc. No. 13).  Plaintiff is proceeding *in forma pauperis*. (Doc. No. 6).

## I.    BACKGROUND

*Pro se* Plaintiff filed a civil rights suit pursuant to 42 U.S.C. § 1983 while incarcerated at

the Alexander Correctional Institution with regards to incidents that allegedly occurred at the

Lanesboro, Marion, and Alexander C.I.s as well as Central Prison.[1] He named 10 Defendants in

his Complaint and it passed initial review only against Defendant Barker for the denial of due

process in a prison disciplinary proceeding. See (Doc. No. 9). He was given the opportunity to

amend and he filed an Amended Complaint which is now before the Court for initial review.

Plaintiff names 85 Defendants in the Amended Complaint. The Defendants who are named in the

body of the Amended Complaint are: Lanesboro C.I. Captain **Aaron**, Marion C.I. Nurse **Altwel**,

Marion C.I. Disciplinary Hearing Officer ("DHO") Robert T. **Barker**, Alexander C.I.

Superintendent **Beaver**, Alexander C.I. Unit Manager **Bieker**, Marion C.I. Unit Manager T.

---

[1] Plaintiff currently resides at the Marion C.I.

**Boyswort**h, Marion C.I. Mailroom Staff **Brookshire**, Marion C.I. Captain A. **Carson**, Lanesboro C.I. Sergeant **Clawson**, Marion C.I. Superintendent H. **Corpening**, Marion C.I. Officer **Cosby**, Marion C.I. Program Director D. **Cotherin**, Marion C.I. Officer **Davis**, Alexander C.I. Assistant Superintendent **Dye**, Alexander C.I. Physical Therapist T. **Ford**, Marion C.I. Officer J. **Grant**, Marion C.I. Lieutenant **Guzman**, Marion C.I. Officer **Hamby**, Marion C.I. Assistant Unit Manager **Hamilton**, Marion C.I. Officer **Hendley**, Marion C.I. SRG Officer A. **Hergenrother**, Lanesboro C.I. Floor Officer **Holder**, Marion C.I. Sergeant A. **Hollingworth**, Lanesboro C.I. Floor Officer **Honbarrier**, Marion C.I. Officer S. **Hunt**, Marion C.I. Program Director Ms. J. **Jenkins**, Marion C.I. Officer **Keller**, Marion C.I. Officer **Kidd**, Marion C.I. Officer **Kizer**, Marion C.I. Sergeant **Kinzer**,[2] Lanesboro C.I. Sergeant **Krantz**, Lanesboro C.I. Sergeant **Lambert**, Director of Prisons Kenneth F. **Lassiter**, Marion C.I. SRG Captain **Long**, Marion C.I. Officer **Lyons**, Lanesboro C.I. Sergeant **Mack**, Marion C.I. Officer R. **Marsh**, Lanesboro C.I. Floor Officer **McClendon**, Lanesboro C.I. Officer **Merriman**, Marion C.I. Officer **Morris**, Marion C.I. DHO Randy **Mull**, Marion C.I. Psychiatrist Dr. **Murphy**, Marion C.I. IB Officer **Nanney**, Marion C.I. Sergeant T. **Puett**, Marion C.I. Captain **Richards**, Lanesboro C.I. Officer **Smith**, Lanesboro C.I. Floor Officer **Snipes**, Lanesboro C.I. Nurse **Stewart**, Marion C.I. Sergeant **Stiles**, Marion C.I. SRG Lieutenant C. **Surrat**, Marion C.I. Case Worker **Suttles**, Marion C.I. Program Director G. **Swink**, Marion C.I. SRG Sergeant **Taylor**, Marion C.I. Officer **Tilley**, Lanesboro C.I. Floor Officer Ms. **Wall**, Marion C.I. Notary Amy **Ward**, Marion C.I. Assistant Superintendent D. **Watkins**, Marion C.I. Nurse **Welch**, Lanesboro C.I. DHO Alfred **Williams**, Marion C.I. Assistant Unit Manager A. **York**, Lanesboro C.I. Sergeant **Zimmerman**, **John Does** 1-7, and DPS

---

[2] Plaintiff names as Defendants "Officer Kizer" and "Sergeant Kinzer," however, the body of the Complaint appears to use Kizer and Kinzer interchangeably. This Order will refer to Kizer and Kinzer as they appear in the Amended Complaint.

Psychiatrist **Jane Doe**.

Liberally construing the Amended Complaint and accepting the allegations as true, Plaintiff submitted a grievance on May 12, 2015, against Sergeant Clawson at Lanesboro C.I. about Clawson's actions. Plaintiff started having more infractions along with "favoritism and discrimination." (Doc. No. 13 at 18).

On September 18, 2015, Plaintiff submitted a grievance due to Zimmerman's "profane language" towards him and missing personal property. (Doc. No. 13 at 18).

On April 17, 2016, Plaintiff was handcuffed by Clawson in the kitchen where Plaintiff's work station was located, and he was escorted to the restrictive housing cage. Plaintiff was told to exit the cage after officers removed other inmates to the cell blocks. Plaintiff was told to walk in a different direction. Officer Honbarrier grabbed Plaintiff and pushed his face against a glass window and forced Plaintiff to the floor while Plaintiff in restraints and posed no risk to officers. Officers Snipes, Holder, McClendon, Williamson, Wall, Hudson, Lambert and others carried Plaintiff outside and threw him into a cage. Plaintiff asked for medical assistance and he was humiliated because other offenders were walking by. Plaintiff informed Captain Aaron about these acts of retaliation and excessive force and asked for an incident report. Plaintiff was escorted in a wheelchair to be seen by Nurse Stewart and he informed her of pain and about the altercation. She refused to assist Plaintiff an insisted that he submit a sick call if the pain continued. Plaintiff was placed into a holding cage and attempted to get Nurse Evans' attention.

Plaintiff was escorted back to the cell block and refused to enter an unsanitary cell due to health and a safety hazard due to his full restraints. Officers Snipes, Holder, Wall, Williams, Hudson, and Lambert dragged Plaintiff up the stairs. McClendon slammed his head into a rail on the top tier and Hudson dragged him into the cell by his leg restraints, then kicked him in the

stomach and left him in the cell without being examined by medical staff, which policy requires after a use of force. Inmate Jonnie Allen witnessed this and wrote a statement on Plaintiff's behalf. However, Sergeant Mack refused to gather Allen's statement. Disciplinary Hearing Officer ("DHO") Alfred Williams was notified and refused to call Allen as a witness at the disciplinary hearing. The DHO was also informed that Zimmerman retaliated against Plaintiff and purposefully changed the incident report cell numbers. Plaintiff was found guilty of all infractions by the DHO on April 17, 2016. Plaintiff was held in a cell in full restraints for 24 hours on April 17, 2016.

Plaintiff was moved to Anson Unit where he was assaulted by another inmate. Officer Smith opened the wrong cell door and Officer Merriman refused to take any action to prevent it on June 29, 2016, while coming from recreation on segregation. Plaintiff asked for medical assistance and informed Sergeant Krantz but it was denied. Second shift allowed Plaintiff to be seen by Nurse Boss.

Plaintiff was refused reimbursement for shoes documented by Officer Lee on April 17, 2016, and was denied process to grieve by Assistant Unit Manager York on April 17, 2016.

On March 10, 2017, Sergeant Puett took personal property from Plaintiff while he was at court including hygiene items, religious items, and legal materials. Puett supposedly documented and stored the items but "Puett acted abusively and knowingly." (Doc. No. 13 at 20). Plaintiff has a strong and sincere belief in the Rastafarian faith and can therefore have his crowns and Rasta books. He refused to sign a DC-160 form on March 20, 2018, when Officer B. Smith came with his property which only consisted of a radio and broken headphones. The rest of Plaintiff's property was missing. Plaintiff tried to go through administrative remedies but multiple grievances were never processed due to staff throwing away grievances "unknowingly." (Doc. No. 13 at 20).

On April 5, 2017, Plaintiff held the trap to speak to Officer in Charge A. Carson due to

harassment and false infractions by T. Puett, J. Grant, Sergeant Jenkins, and S. Hunt. During this attempt, Lieutenant Richards directed the "distraction team" leader Sergeant Hollingworth to made Plaintiff's cell. (Doc. No. 13 at 21). Officer John Doe shoved a stick into Plaintiff's urethra causing lost breath and pain. Officer Kidd was recording this. Plaintiff then submitted to full restraints with handcuffs behind his back, leg restraints, a waist chain, and a black transfer box. Officer John Doe purposefully bent Plaintiff's wrist. Plaintiff complained but Doe and Hollingworth continued. Doe and Hollingworth threw Plaintiff on the floor and shocked him with electronic shield by placing it on Plaintiff's head. Plaintiff was taken to the d-con shower in full restraints. Plaintiff said he could not wash off the mace and Hollingworth stated "use your shoulders." (Doc. No. 13 at 21). Nurse Ward was aware of bruises and informed of pain but she failed to give Plaintiff any assistance for pain. Hollingworth, two John Does, and Kidd acted with a culpable state of mind and Carson refused to do anything to stop it.

Plaintiff accumulated five infractions but never had the opportunity to write any statement or call witnesses due to T. Puett and Sergeant Jenkins' denial. DHO Barker purposefully found Plaintiff guilty on all infractions even though he was informed of the denial. On June 5, 2017, Officer Hergenrother refused to appeal the decision on a religious item that was denied by SRG and mailroom staff Brookshire, although DPS policy provides for an appeal. On June 7, 2017, Plaintiff was denied a food package box without any notification why it was denied.

On June 7, 2017, Plaintiff was assaulted and excessive force was used with the lack of medical assistance by Nurse Welch, and Officers Guzman, Kinzer, Lyons, and Tilley. They assaulted Plaintiff by pulling his hair and kicking him while he was on the ground, and maced him three times even after he was in restraints.

Plaintiff wrote numerous letters to Lassiter to appeal the infractions by Barker and to

inform him of Hergenrother, Taylor, Surrat, Long, and Brookshire refusing to send out appeals in violation of the disciplinary procedure. Plaintiff's letters were not returned and they never left the facility.

Plaintiff received an infraction for gang activity due to a handwritten UCC form by Hergenrother even though the form did not pose a threat to the facility. Plaintiff was found guilty on October 30, 2017, by Barker.

Plaintiff spoke Mitchell and Corpeining on August 3, 2017, and informed them of the retaliation, discrimination, and unprofessionalism by the listed SRG staff defendants, DHO, and Unit Managers Hamilton and Boysworth by depriving Plaintiff's privacy by publishing false information about him, depriving him of access to the media and press, and humiliation and discrimination by placing a "box" on Plaintiff's cell door for 90 days between July 5, 2017, and October 30, 2017. (Doc. No. 13 at 22).

Psychiatrist Jane Doe refused to assist Plaintiff at Central Prison when Plaintiff claimed to have suicidal thoughts on April 19, 2017, stating "you will not be staying here, nor assisted," and refused to further help him. (Doc. No. 13 at 23).

Turner, York, Corpening, Watkins, Swink, Jenkins, Cotherin, Boysworth, and Hamilton denied Plaintiff visitation and phone calls since entering the facility on December 13, 2016.

Nurse Williams denied Plaintiff any assistance on use of force that led to wrist bleeding on July 5, 2017, and pain in his wrist, arm, neck, and back. Sergeant Stiles took pictures for the incident report. Shortly after the "distraction team" forced blood from Plaintiff by five John Does, while Assistant Superintendent Watkins made racial remarks such as "nigger boy, cornbread eater." (Doc. No. 13 at 23).

On December 22, 2016, Plaintiff was on suicide watch and Watkins humiliated him by

walking him through the facility wearing only a green smock. While inside Watkins' office, he stated to Plaintiff, "I'll make sure your life be a living hell here!" (Doc. No. 13 at 23). Plaintiff was later forced to sign for removal from a vegan diet which goes against his religion by forcing him to eat meat and processed food.

On June 8, 9, and 10, 2017, Plaintiff was forced to do recreation in full restraints out of retaliation and to humiliate him. Hamilton and Bosworth gave the approval. This required Plaintiff to take a shower in full restraints on June 10, 2017. He slipped, requiring immediate medical attention. Medical staff Altwel refused to assist while Plaintiff was still in full restraints.

On October 30, 2017, Plaintiff was transferred to Alexander C.I. and placed in restrictive housing for physical therapy and was refused hygiene products. He was unable to do physical therapy in full restraints. Therapist Tom Ford put false statements in his medical reports during physical therapy. Plaintiff attempted to notify Unit Manager Biecker through the grievance process of false placement in restrictive housing for unknown reasons. He informed Superintendent Beaver and Assistant Superintendent Dye during monthly rounds but Plaintiff remained on restrictive housing.

Plaintiff was transferred back to Marion C.I. and was deprived of property that he was allowed to have. Plaintiff "refuse[d] to sign papers giving consent that he will be a participant and submitted grievances to Hamilton." (Doc. No. 13 at 24).

Plaintiff was refused a notary on March 2, 2018, by Amy Ward for unknown reasons. When Plaintiff exited his cell for recreation on March 3, 2018, to inform OIC Carson and requested to speak to him multiple times. Out of retaliation and discrimination, Davis, Nanney, and Marsh went into Plaintiff's cell and destroyed and threw away property including a Rastafarian necklace. Sergeant Kizer refused to give Plaintiff the opportunity to write a statement or call witnesses.

Grievances were submitted and rejected by Hamilton.

On May 29, 2018, SRG Hergenrother opened outgoing legal mail outside of Plaintiff's presence in violation of the inmate mail policy and procedure. Hergenrother placed an infraction on Plaintiff for gang material. DHO Randy Mull refused to call witnesses or gather statements from witnesses and entered a guilty finding against Plaintiff. Dr. Murphy refused to properly assist Plaintiff when placing multiple referrals about Plaintiff's depressed state of mind that was due to Defendants' actions.

Lassiter seeks to place more harsh conditions of confinement on Plaintiff "by restricting Plaintiff from being able to be placed on minimum." (Doc. No. 13 at 25). "Even by placing memorandum on August 10, 2018 by stating such, also shows discrimination." (Id.).

Plaintiff is refused placement in educational programs and case worker Suttles refuses to process transfer requests for a facility with open educational courses other than 20 months on restrictive housing without meaningful review.

Boysworth, Hamilton, Corpening, Watkins, Swink, Jenkins, and Cotherin continue to have Plaintiff in restrictive housing where he is unable to properly rest because the doors are open and slammed every round, plus additional slamming when counts, medical, etc. Plaintiff is unable to have two hours of recreation pursuant to policy, stating "RHCP," and is denied recreation by Sergeant Kizer and his shift staff (Marsh, Nanney, Davis, Hamby, Morris, Keller, Hendley, and Cosby). Plaintiff is unable to view outside his window due to a metal plate. There is no desk or chair to write or draw. Corpening refuses to clean ventilation, which exposes Plaintiff to unsanitary cell and unhealthy breathing conditions. Plaintiff is housed in that cell for long periods without adequate exercise or sunlight.

Plaintiff is forced to participate in RDU and, if he refuses, he will be punished by being

deprived of property and being placed in harsher conditions. Plaintiff should be given a choice of participating in programs.

Plaintiff states his injuries are: "Neck, Back, and Foot Pain, Mental & Emotional Distress; Pain & Suffering; Modes Disorders; Eating Disorders; Lack of Trust; Sleeping Difficulties; Stockholm Syndrome; Post Traumatic Stress; Grief Modes; Personality Disorder; Disorganize Speech; Defamation of Character; Bipolar Disorder; and Schizophrenia. Multiple mental health and medical treatment that Plaintiff received by psychiatrist and doctors but was inadequate to cure injuries." (Doc. No. 13 at 5).

As relief, Plaintiff seeks declaratory judgment, compensatory and punitive damages, jury trial, costs, preliminary and permanent injunction (ordering Lassiter, Mitchell and Corpening to immediately transfer him to Central Prison and ceasing the RDU program as unconstitutional), and any additional relief that is just, proper, and equitable.

## II.     STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him

to relief.'" <u>Veney v. Wyche</u>, 293 F.3d 726, 730 (4th Cir. 2002) (quoting <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>see also</u> <u>Smith v. Smith</u>, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. <u>Weller v. Dep't of Soc. Servs.</u>, 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 570 (2007); <u>see</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) (the <u>Twombly</u> plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." <u>Francis v. Giacomelli</u>, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. <u>Id.</u>

### III.    DISCUSSION[3]

**(1)    <u>Parties</u>**

#### (a) <u>Individuals Not Named as Defendants</u>

The Federal Rules of Civil Procedure provide that, "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a); <u>see</u> <u>Myles v. United States</u>, 416

---

[3] Extraneous, conclusory, and meaningless allegations have been omitted from this discussion and are insufficient to proceed.

F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption and arrange for service of process."). Although *pro se* litigants are entitled to have their pleadings liberally construed, <u>Haines</u>, 404 U.S. at 520, "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants," <u>Pliler v. Ford</u>, 542 U.S. 225 (2004).

The body of the Complaint contains allegations against individuals who are not named as defendants in the caption as required by Rule 10(a). This failure renders Plaintiff's allegations against them nullities. <u>See</u>, <u>e.g.</u>, <u>Londeree v. Crutchfield Corp.</u>, 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served).

**(b) <u>No Allegations</u>**

The Federal Rules of Civil Procedure require a short and plain statement of the claim. Fed. R. Civ. P. 8(a)(2). Conclusory allegations, unsupported by specific allegations of material fact are not sufficient. <u>Simpson v. Welch</u>, 900 F.2d 33, 35 (4th Cir. 1990). A pleader must allege facts, directly or indirectly, that support each element of the claim. <u>Dickson v. Microsoft Corp.</u>, 309 F.3d 193, 201-02 (4th Cir. 2002).

Plaintiff names 85 Defendants but only makes factual allegations against 69 of them in the Amended Complaint. Therefore, the individuals named as Defendants but who are not addressed in the body of the Amended Complaint will be dismissed from this action for failure to state a claim.

**(c) <u>Supervisors</u>**

A state official can be in a § 1983 suit in three ways: in his personal capacity, his official

capacity, or in a more limited way, his supervisory capacity.[4] King v. Rubenstein, 825 F.3d 206, 223–24 (4th Cir. 2016). For personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Graham, 473 U.S. at 166. In an official-capacity suit, however, "[m]ore is required:" the suit is "treated as a suit against the entity," which must then be a "'moving force' behind the deprivation," id. (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); thus, the entity's "'policy or custom' must have played a part in the violation of federal law," id. (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978)). Meanwhile, a supervisor can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

Plaintiff alleges he wrote numerous letters to Lassiter to appeal the infractions by Barker and to inform him of Hergenrother, Taylor, Surrat, Long, and Brookshire refusing to send out appeals in violation of the disciplinary procedure. However, Plaintiff's letters were not returned and they never left the facility. These allegations are self-defeating because Plaintiff admits that his letters to Lassiter never left the facility and, accordingly never reached him.

Plaintiff spoke Mitchell and Corpening on August 3, 2017, and informed them of the retaliation, discrimination, and unprofessionalism by the listed SRG staff defendants, DHO, and Unit Managers by depriving Plaintiff's privacy by publishing false information about him,

---

[4] To the extent that Plaintiff alleges individual supervisors were personally involved in the alleged constitutional violations he experienced, they will be addressed in separate sections.

depriving him of access to the media and press, and humiliation and discrimination by placing a "box" on Plaintiff's cell door for 90 days between July 5, 2017, and October 30, 2017. (Doc. No. 13 at 22). Plaintiff alleges that, at Alexander C.I., he informed Superintendent Beaver and Assistant Superintendent Dye during monthly rounds that he was falsely placed on restrictive housing for unknown reasons but Plaintiff remained on restrictive housing. These claims fail because Plaintiff has failed to establish any underlying constitutional violation that Corpening, Beaver, or Dye either created or ignored through custom and policy, or knew that their subordinates engaged in conduct that posed a pervasive risk of harm and ignored that risk.

Plaintiff claims that Lassiter seeks to place more harsh conditions of confinement on Plaintiff "by restricting Plaintiff from being able to be placed on minimum." (Doc. No. 13 at 25). "Even by placing memorandum on August 10, 2018 by stating such, also shows discrimination." (Id.). These vague allegations are insufficient to state a plausible claim for relief against Lassiter based on his customs or policies, or the actions of his supervisees. Moreover, it is too unclear to proceed.

Therefore, Plaintiff's claims against the supervisory Defendants in their official and supervisory capacities are insufficient to proceed and will be dismissed.

 **(2)**     **Cruel and Unusual Punishment**

The Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The Constitution "does not mandate comfortable prisons, … but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v.

Chapman, 452 U.S. 337, 349 (1981)). Thus, prison official must provide sentenced prisoners with adequate food, clothing, shelter, and medical care, and "take reasonable measures to guarantee the[ir] safety…." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); see Farmer, 511 U.S. at 832-34. Inmates' claims that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir.1987). To establish the imposition of cruel and unusual punishment, a prisoner must prove two elements: (1) "the deprivation of [a] basic human need was objectively sufficiently serious," and (2) "subjectively the officials act[ed] with a sufficiently culpable state of mind." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993) (quotation omitted).

**(a) Excessive Force**

Prison officials may not use excessive physical force against prisoners. See Hudson v. McMillian, 503 U.S. 1 (1992). "[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Id. at 4; see Wilkins v. Gaddy, 559 U.S. 34, 34 (2010). The "core judicial inquiry," is not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated ... whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Id. at 9, 13–14.

The Fourth Circuit addresses a failure to intervene claim as a theory of "bystander liability"

wherein there is "an omission to act...coupled with a duty to act." <u>Randall v. Prince George's Cnty.</u>, 302 F.3d 188, 202 (4th Cir. 2002). A "bystander officer" could be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." <u>Id.</u> at 204. However, if no excessive force is applied by the fellow officer, the officer witnessing the conduct "cannot be held liable under bystander liability for a failure to intervene." <u>Howie v. Prince George's Cnty.</u>, 2009 WL 2426018 at *6 (D. Md. Aug. 5, 2009); <u>see</u> <u>also</u> <u>Jarvis v. Securitas Sec. Servs. USA</u>, 2012 WL 527597 (D. Md. Feb. 16, 2012).

A verbal threat combined with action apparently designed to carry out that threat may state and Eighth Amendment claim. <u>Hudspeth v. Figgins</u>, 584 F.2d 1345, 1348 (4th Cir. 1978). However, "[v]erbal abuse alone does not violate a constitutional right." <u>Moody v. Grove</u>, 885 F.2d 865, 865 (4th Cir. 1989) (unpublished) (citing <u>Collins v. Cundy</u>, 603 F.2d 825, 827 (10th Cir. 1979)).

Plaintiff alleges that Zimmerman used "profane language" towards him that he included in a grievance on September 18, 2015. He claims that, on July 5, 2017, Watkins made racial slurs and told him he would make his life a "living hell" at Marion C.I. (Doc. No. 13 at 23). These slurs and verbal threats alone are insufficient to state a plausible Eighth Amendment claim.

On April 17, 2016, Plaintiff alleges that Honbarrier grabbed him, pushed his face against a window, and force him to the floor while he was restrained and posed no risk to officers. Officers Snipes, Holder, McClendon, Williamson, Wall, Hudson, Lambert and others carried Plaintiff outside and threw him into a cage. This altercation allegedly resulted in "pain." (Doc. No. 13 at 18). These claims are inadequately extreme to state a plausible Eighth Amendment claim.

Plaintiff claims that, later, Officers Snipes, Holder, Wall, Williams, Hudson, and Lambert

dragged him up the stairs, and McClendon slammed his head into a rail on the top tier and Hudson dragged him into the cell by his leg restraints, then kicked him in the stomach. These allegations state a plausible Eighth Amendment claim against McClendon and Hudson.

On April 5, 2017, Officer John Doe shoved a stick into Plaintiff's urethra causing lost breath and pain. Plaintiff then submitted to full restraints with handcuffs behind his back, leg restraints, a waist chain, and a black transfer box. Officer John Doe purposefully bent Plaintiff's wrist. Plaintiff complained but Doe and Hollingworth continued. Doe and Hollingworth threw Plaintiff on the floor and shocked him with electronic shield by placing it on Plaintiff's head. Plaintiff was taken to the d-con shower in full restraints. Plaintiff said he could not wash off the mace and Hollingworth stated "use your shoulders." (Doc. No. 13 at 21). Carson refused to do anything to stop these actions. Plaintiff has stated a plausible Eighth Amendment claim against John Doe and Hollingworth, but he has failed to adequately allege that Carson was in a position to intervene and failed to do so. Plaintiff has failed to adequately identify John Doe such that service would be possible. Therefore, this claim will be permitted to proceed against Hollingworth and John Doe.[5]

On June 7, 2017, Plaintiff alleges that Officers Guzman, Kinzer, Lyons, and Tilley assaulted him by pulling his hair and kicking him while he was on the ground, and maced him three times even after he was in restraints. These allegations are sufficient to state a plausible Eighth Amendment violation against Guzman, Kinzer, Lyons, and Tilley.

---

[5] John Doe suits are permissible only against "real, but unidentified, defendants." Schiff v. Kennedy, 691 F.2d 196, 197 (4th Cir. 1982). The designation of a John Doe defendant "is generally not favored in federal courts; it is appropriate only when the identity of the alleged defendant is not known at the time the complaint is filed and the plaintiff is likely to be able to identify the defendant after further discovery." Njoku v. Unknown Special Unit Staff, 217 F.3d 840, 840 (4th Cir. 2000). "[I]f it does not appear that the true identity of an unnamed party can be discovered through discovery or through intervention by the court, the court could dismiss the action without prejudice." Schiff, 691 F.2d at 197-98 (because it appeared that John Doe was an actual person, it was error for the district court to conclude that, under appropriate circumstances, this type of case would not be permitted).

Plaintiff's Eighth Amendment excessive force claims will therefore be permitted to proceed against **Guzman, Hollingworth, Hudson, Kinzer, Lyons, McClendon, Tilley,** and **John Doe.**

### (b) Conditions of Confinement

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission ... result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298 (citing Rhodes, 452 U.S. at 347).

Plaintiff alleges that, on April 17, 2016, he was temporarily placed in a restrictive housing cage. He was then thrown into an outside cage, which was humiliating because offenders were walking by. He was then brought inside and placed in a holding cage. Next, he was taken to an unsanitary cell that he refused to enter. He was held in a cell in full restraints for 24 hours that day.

On August 3, 2017, he notified Mitchell and Corpening that the listed SRG staff defendants, DHO, and Unit Managers Hamilton and Boysworth were depriving him of privacy by publishing false information about him, depriving him of access to the media and press, and humiliated him and discriminated against him by placing a "box" on his cell door for 90 days between July 5, 2017, and October 30, 2017. On December 13, 2016, Turner, York, Corpening, Watkins, Swink, Jenkins, Cotherin, Boysworth, and Hamilton denied Plaintiff visitation and phone calls since entering the facility. On December 22, 2016, Plaintiff was on suicide watch and Watkins

humiliated him by walking him through the facility wearing only a green smock. On October 30, 2017, Plaintiff was transferred to Alexander C.I. and placed in restrictive housing for physical therapy and was refused hygiene products. He was unable to do physical therapy in full restraints. Therapist Tom Ford put false statements in his medical reports during physical therapy. Plaintiff attempted to notify Unit Manager Biecker through the grievance process of false placement in restrictive housing for unknown reasons. He infirmed Superintendent Beaver and Assistant Superintendent Dye during monthly rounds but Plaintiff remained on restrictive housing. Lassiter seeks to place more harsh conditions of confinement on Plaintiff "by restricting Plaintiff from being able to be placed on minimum." (Doc. No. 13 at 25). "Even by placing memorandum on August 10, 2018 by stating such, also shows discrimination." (Id.). Plaintiff is refused placement in educational programs and case worker Suttles refuses to process transfer requests for a facility with open educational courses other than 20 months on restrictive housing without meaningful review. Boysworth, Hamilton, Corpening, Watkins, Swink, Jenkins, and Cotherin continue to have Plaintiff in restrictive housing where he is unable to properly rest because the doors are open and slammed every round, plus additional slamming when counts, medical, etc. Plaintiff is unable to have two hours of recreation pursuant to policy, stating "RHCP," and is denied recreation by Sergeant Kizer and his shift staff (Marsh, Nanney, Davis, Hamby, Morris, Keller, Hendley, and Cosby). Plaintiff is unable to view outside his window due to a metal plate. There is no desk or chair to write or draw. Corpening refuses to clean ventilation, which exposes Plaintiff to unsanitary cell and unhealthy breathing conditions. Plaintiff is housed in that cell for long periods without adequate exercise or sunlight. Plaintiff is forced to participate in RDU and, if he refuses, he will be punished by being deprived of property and being placed in harsher conditions. Plaintiff should be given a choice of participating in programs.

The conditions of confinement that Plaintiff describes are inadequately severe to deny the minimal civilized measures of life's necessities. Therefore, these claims will be dismissed.

**(c) <u>Failure to Protect</u>**

To obtain relief under § 1983 on a claim of failure to protect, an inmate must show: (1) "serious or significant physical or emotional injury" resulting from that failure; and (2) the prison officials had a "sufficiently culpable state of mind," which in this context is deliberate indifference. <u>Farmer</u>, 511 U.S. at 834. A prison official is "deliberately indifferent to a substantial risk of harm to a [prisoner] when that [official] 'knows and disregards' the risk." <u>Parrish ex rel. Lee v. Cleveland</u>, 372 F.3d 294, 302 (4ᵗʰ Cir. 2004) (quoting <u>Farmer</u>, 511 U.S. at 837). "It is not enough to prove that the official should have known of the risk; instead, 'the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he should draw the inference.'" <u>Kartman v. Markle</u>, 582 Fed. Appx. 151, 153 (2014) (quoting <u>Farmer</u>, 511 U.S. at 837). A showing of negligence does not rise to the level of deliberate indifference. <u>Davidson v. Cannon</u>, 474 U.S. 344, 347-48 (1986).

Plaintiff claims that he was moved to Anson Unit where he was assaulted by another inmate on June 29, 2016, while coming from recreation on segregation. Officer Smith allegedly opened the wrong cell door and Officer Merriman refused to take any action to prevent it.

Plaintiff's allegations fail to rise above the level of negligence and, therefore, this claim will be dismissed.

**(d) <u>Deliberate Indifference Medical</u>**

To state a *prima facie* case of deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. <u>Heyer v. United States Bureau of Prisons</u>, 849 F.3d 202, 210 (4ᵗʰ Cir.

2017) (citing <u>Iko v. Shreve</u>, 535 F.3d 225, 241 (4th Cir. 2008)). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Iko</u>, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifferent to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness." <u>Miltier v. Beorn</u>, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* <u>Farmer</u>, 511 U.S. at 825. However, mere negligence or malpractice does not violate the Eighth Amendment. <u>Miltier</u>, 896 F.2d at 852.

On April 17, 2016, Plaintiff was escorted in a wheelchair to be seen by Nurse Stewart after the incident with Honbarrier, Snipes, Holder, McClendon, Williamson, Wall, Hudson, and Lambert. He informed Stewart of pain and about the altercation. She refused to assist Plaintiff and insisted that he submit a sick call if the pain continued. Plaintiff was placed into a holding cage and attempted to get Nurse Evans' attention.

Plaintiff claims that, when he later refused to enter an unsanitary cell, officers Snipes, Holder, Wall, Williams, Hudson, and Lambert dragged him up the stairs, McClendon slammed his head into a rail on the top tier, and Hudson dragged him into the cell by his leg restraints, then kicked him in the stomach and left him in the cell without being examined by medical staff. Plaintiff claims that the failure to call medical violate policy, but he fails to allege that he had a serious medical need to which any Defendant was deliberately indifferent for failing to summon medical care. This claim is too vague and conclusory to proceed and will be dismissed.

When Plaintiff was moved to Anson Unit and was allegedly assaulted by another inmate, he asked for assistance and informed Sergeant Krantz but his request was denied. He was allowed to see Nurse Boss on second shift. Plaintiff fails to explain what serious medical need he

experienced that required immediate medical attention, and how the delay in providing treatment was deliberately indifferent. This claim is too vague and conclusory to proceed.

On April 5, 2017, Plaintiff saw Nurse Ward after he was hit by John Doe, maced, and struck with electric shields. Ward was aware of bruises and informed of pain but she failed to give Plaintiff any assistance for pain. The allegations that Plaintiff had bruises fail to state the existence of a serious medical need. Plaintiff further fails to demonstrate how declining to treat bruises was deliberately indifferent.

On June 7, 2017, Plaintiff alleges that Nurse Welch failed to treat him after he was maced, his hair was pulled, and he was kicked. These allegations are too vague and conclusory to proceed because Plaintiff fails to allege that Welch knew that Plaintiff suffered from a serious medical need and that Welch deliberately chose to withhold needed medical care. Plaintiff's allegation that Nurse Williams denied Plaintiff any assistance for a bleeding wrist, and pain in his wrist, arm, neck, and back on July 5, 2017, is too vague and conclusory to proceed. He fails to describe the extent of the bleeding or pain and thus has failed to demonstrate the existence of a serious medical need that Williams knew about and deliberately refused to treat.

On June 10, 2017, Plaintiff allegedly slipped in the shower while in full restraints which required immediate medical attention. Medical staff Altwel refused to assist while Plaintiff was still in full restraints. This allegation is too vague and conclusory to proceed because he fails to demonstrate the existence of a serious medical need that Altwel knew about and deliberately refused to treat.

On October 30, 2017, Plaintiff was unable to do physical therapy in full restraints and Physical Therapist Ford put false statements in his medical reports during physical therapy. This allegation is too vague and conclusory to proceed because Plaintiff fails to allege that the decision

to restrain Plaintiff or that Plaintiff's inability to participate in the therapy was Ford's fault, or that the unspecified false statement in the medical report amounted to deliberate indifference or was anything more than negligent.

On April 19, 2017, Psychiatrist Jane Doe refused to assist Plaintiff at Central Prison when Plaintiff claimed to have suicidal thoughts, stating "you will not be staying here, nor assisted," and refused to further help him. (Doc. No. 13 at 23). This allegation is insufficient to proceed because Plaintiff fails to explain how delaying treatment until he was transferred to another facility an unspecified time later was deliberately indifferent.

On May 29, 2018, Dr. Murphy refused to properly assist Plaintiff when placing multiple referrals about Plaintiff's depressed state of mind that was due to Defendants' actions. These vague and conclusory allegations fail to establish that Plaintiff's depressed state of mind was a serious medical need that required treatment or that Murphy's refusal to provide treatment was deliberately indifferent or anything more than negligent.

Therefore, Plaintiff's claims that various Defendants were deliberately indifferent to his serious medical needs will be dismissed.

## (2) **Retaliation**

Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth, 584 F.2d at 1347. To succeed on such a claim, a plaintiff must first allege that "the retaliatory act was taken in response to the exercise of a constitutionally protected right...." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Thereafter, a plaintiff must demonstrate that he suffered some adverse impact or actual injury. See American Civil Libs. Un. of Md., Inc. v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993) (citing Huang v. Board of Governors of Univ. of North Carolina, 902 F.2d 1134, 1140 (4th Cir. 1990)). In addition, a plaintiff must come forward with

specific evidence "establish[ing] that but for the retaliatory motive the complained of incident[s] ... would not have occurred." <u>Woods v. Smith</u>, 60 F.3d 1161, 1166 (5th Cir.1995); <u>accord</u> <u>Ponchik v. Bogan</u>, 929 F.2d 419, 420 (8th Cir.1991) (plaintiff must show that action would not have occurred "but for" the alleged reprisal); <u>Collinson v. Gott</u>, 895 F.2d 994, 1002 (4th Cir. 1990) (Phillips, J., concurring); <u>McDonald v. Hall</u>, 610 F.2d 16, 18–19 (1st Cir.1979). In the prison context, such claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." <u>Adams v. Rice</u>, 40 F.3d 72, 74 (4th Cir. 1994).

Plaintiff alleges that he started having more "infractions" along with "favoritism and discrimination" after he submitted a grievance about Sergeant Clawson's "actions" on May 12, 2015. (Doc. No. 13 at 18). Plaintiff claims that, on April 17, 2016, he informed Aaron of "recent acts of retaliation and excessive force…." (<u>Id.</u>). On March 3, 2018, Davis, Nanney, and Marsh went into Plaintiff's cell and destroyed and threw away property out of "retaliation and discrimination," then Sergeant Kizer refused to give Plaintiff the opportunity to write a statement or call witnesses. (Doc. No. 13 at 24).

The foregoing allegations are too vague and conclusory to proceed. With regards to Clawson, Plaintiff alleges that he filed a grievance against Clawson, which is a First Amendment right, however his claim of "more infractions" is too vague to support a but-for relationship with having filed the grievance. His April 17 claim of "recent retaliation" and his March 3 claim of "retaliation and discrimination" fail to explain either how the allegedly retaliatory act was done in response to Plaintiff's exercise a constitutionally protected right, or a "but for" relationship with the retaliatory motive. Therefore, Plaintiff's retaliation claims will be dismissed.

**(3)**    **Due Process**

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty that was accomplished by state action. Tigrett v. The Rector and Visitors of the Univ. of Va., 290 F.3d 620, 628 (4ᵗʰ Cir. 2002); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4ᵗʰ Cir. 1988). "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." Stone, 855 F.2d at 172.

**(a)** **Discipline**

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citing Morrissey v. Brewer, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits or solitary confinement, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. See Wolff, 418 U.S. at 564-71. There is no constitutional right to confront and cross-examine witnesses or to retain and

be appointed counsel.  See Baxter v. Palmigiano, 425 U.S. 308, 322 (1976); Brown v. Braxton, 373 F.3d 501, 505-06 (4th Cir. 2004).  As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied.  See Baxter, 425 U.S. at 323 n.5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence."  Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985).  Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact.  See Kelly v. Cooper, 502 F. Supp. 1371, 1376 (E.D. Va. 1980).  The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious.  See Hill, 472 U.S. at 456; see also Baker v. Lyles, 904 F.2d 925, 933 (4th Cir. 1990).  As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.  A claim for declaratory relief and money damages based on allegations of deceit and bias on the part of state officials involved in disciplinary proceedings that necessarily imply the invalidity of the punishment imposed is not cognizable under § 1983. Edwards v. Balisok, 520 U.S. 641 (1997).

Plaintiff alleges that DHO Williams was notified about, and refused to call, a witness at the disciplinary hearing April 17 incident; DHO Barker never gave him the opportunity to write any statement or call witnesses with regards to the April 5 incident; and DHO Mull refused to call witnesses or gather statements from witnesses with regards to the May 29 incident. These allegations state a plausible due process violation. Plaintiff further claims that Hergenrother, Taylor, Surrat, Long, and Brookshire refused to send out appeals in violation of the disciplinary procedure likewise state a plausible due process claim. Therefore, Plaintiff's disciplinary due process claims will be permitted to proceed against Defendants **Barker, Brookshire, Hergenrother, Long, Mull, Surrat, Taylor,** and **Williams.**

However, Plaintiff's claims that Williams erred by finding him guilty by relying on false evidence from Zimmerman, and that DHO Barker purposefully found Plaintiff guilty of infractions with regards to the April 5 incident as well as for the handwritten UCC forms, necessarily imply the invalidity of the disciplinary proceedings and will be dismissed.

### (b) **Property**

Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986)). However, post-deprivation remedies do not satisfy the due process requirement where the deprivation complained of is effected pursuant to an established state procedure rather than a random, unauthorized action. Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982).

Under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act. Gallimore v. Sink, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975). North Carolina's post-deprivation remedies are adequate. N.C. Gen. Stat. § 143-291; see Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner).

Plaintiff claims that he submitted a grievance about missing personal property on September 18, 2015. He was refused reimbursement for shoes documented by Officer Lee on April 17, 2016. On March 10, 2017, Sergeant Puett took personal property from Plaintiff while he was at court including hygiene items, religious items, and legal materials. Puett supposedly

documented and stored the items but "Puett acted abusively and knowingly." (Doc. No. 13 at 20). Plaintiff refused to sign a DC-160 form on March 20, 2018, when Officer B. Smith case with his property which only consisted of a radio and broken headphones. The rest of Plaintiff's property was missing. On June 7, 2017, Plaintiff was denied a food package box without any notification why it was denied. Plaintiff was transferred back to Marion C.I. and was deprived of property that he was allowed to have. On March 3, 2018, Davis, Nanney, and Marsh went into Plaintiff's cell and destroyed and threw away property including a Rastafarian necklace.

It appears that the loss or damage to his property was random and unauthorized rather than the result of an established state procedure. Adequate post-deprivation remedies exist for Plaintiff's alleged property loss, so there is no legal theory which would support this claim. See, e.g., Smith v. Ledford, 2006 WL 1431666 at *2 (W.D.N.C. May 22, 2006), aff'd, 203 Fed. Appx. 484 (4th Cir. 2006) (dismissing plaintiff's claim that jail administrator confiscated his personal property upon his departure from the jail and refused to return it, because plaintiff had an adequate post-deprivation remedy for conversion). Therefore, Plaintiff's property claims will be dismissed.

### (c) Classification & Housing

A change in the conditions of a prisoner's confinement that does not exceed the scope of the original sentence only gives rise to a federally protected liberty interest if it imposes atypical and significant hardship in relation to the ordinary incidents of prison life. Sandin v. Conner, 515 U.S. 472 (1995).

Plaintiff complains that he was moved inside Lanesboro C.I. between restrictive housing and Anson Unit, Central Prison, and Marion C.I. where he was enrolled in the RDU Program against his will, where he will be punished through deprivation of property and harsher conditions if he refuses to participate.

Plaintiff's allegations are too vague and conclusory to show that the conditions of his confinement imposed atypical and significant hardship beyond the ordinary incidents of prison life. Therefore, his due process claims with regards to housing and classification will be dismissed.

**(d)     Grievances**

"[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."  Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

Plaintiff complains that various grievances and grievance appeals were rejected, denied, ignored, or uninvestigated. Plaintiff has no constitutional right to the prison grievance procedure, and therefore, he is unable to state a due process claim with regards to any alleged irregularity or violation of the grievance procedure. Therefore, Plaintiff's grievance-related due process claims are dismissed.

**(4)     First Amendment**

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech…." U.S. Const. Amend I. The First Amendment applies to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Pell v. Procunier, 417 U.S. 817, 822 (1974); Pittman v. Hutto, 594 F.2d 407, 410 (4th Cir. 1979). When a prison restriction infringes upon an inmate's First Amendment rights, the alleged infringement "must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979) (citing Jones v. N.C. Prisoners' Labor Un., 433 U.S. 119, 129 (1977)).

**(a)     Religion**

For government conduct to survive scrutiny under the Establishment Clause, "(1) it must have a secular purpose; (2) its principal or primary effect must neither advance nor inhibit religion; and (3) it must not foster an excessive government entanglement with religion." Buxton v. Kurtinitis, 862 F.3d 423, 432 (4th Cir. 2017) (citing Lemon v. Kurtzman, 403 U.S. 602, 612–13 (1971)); see also Madison v. Riter, 355 F.3d 310, 316 (4th Cir. 2003). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. C.I.R., 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). In deciding whether a defendant's actions can be sustained as reasonably related to legitimate penological interests, the court must consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives exist which accommodate the right and satisfy the penological interest. See Turner, 482 U.S. at 89-90.

Plaintiff claims that he has a strong and sincere belief in the Rastafarian faith and can therefore have his crowns and Rasta books. On March 10, 2017, Sergeant Puett took personal property from him including, "religious items," the items were supposedly be documented and stored, but "Puett acted abusively and knowingly." (Doc. No. 13 at 20). Plaintiff refused to sign a DC-160 form when his property was returned on March 20, 2018, because the religious items and

other property was missing. On June 5, 2017, Officer Hergenrother refused to appeal the decision on a religious item that was denied by SRG and mailroom staff Brookshire, although DPS policy provides for an appeal. Plaintiff appears to allege that, on December 22, 2016, Watkins forced him to sign for removal from a vegan diet which goes against his religion by forcing him to eat meat and processed food. On March 3, 2018, Davis, Nanney, and Marsh went into Plaintiff's cell and destroyed and threw away property including a Rastafarian necklace.

It is not clear at this juncture whether the foregoing incidents substantially burdened the exercise of Plaintiff's religion, or if the Defendants' actions were justified by a legitimate penological reason. Therefore, Plaintiff's First Amendment religion claims will be permitted to proceed against **Brookshire, Davis, Hergenrother, Marsh, Nanney, Puett,** and **Watkins.**

    **(b)**    <u>Mail</u>

As a general rule, prisoners have a constitutionally protected interest in their incoming and outgoing mail correspondence. <u>Kaufman v. McCaughtry</u>, 419 F.3d 678, 685 (7th Cir.2005) (citing <u>Rowe v. Shake</u>, 196 F.3d 778, 782 (7th Cir. 1999) (citations omitted)). Persons outside of prison also have an interest in corresponding with prison inmates. <u>See</u> <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 408 (1989). Prison officials may, however, impose restrictions on prisoner correspondence if those restrictions are "reasonably related to legitimate penological interests." <u>Turner</u>, 482 U.S. at 89. When evaluating the constitutionality of prison regulations, courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." <u>Bell v. Wolfish</u>, 441 U.S. 520, 547 (1979) (citations omitted).

Plaintiff claims that, on May 29, 2018, Hergenrother opened outgoing legal mail outside of Plaintiff's presence in violation of the inmate mail policy and procedure and, on June 5, 2017,

refused to appeal the decision on a religious item that was denied by SRG and mailroom staff Brookshire. On June 7, 2017, Plaintiff was denied a food package box without any notification why it was denied.

Plaintiff has alleged he was deprived of incoming and outgoing mail and it is unclear at this juncture whether the Defendants' actions were supported by a valid penological interest. Therefore, the claim against Defendants **Brookshire** and **Hergenrother** with regards to interference with the mail will be permitted to proceed at this time.

**(5)**    <u>**Access to Courts**</u>

Inmates have a constitutional right to a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" which a state may not abridge or impair. <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977); <u>Hudspeth</u>, 584 F.2d at 1347. To make out a *prima facie* case of denial of access to the courts, the inmate cannot rely on conclusory allegations; instead, he must identify with specificity an actual injury resulting from official conduct. <u>Cochran v. Morris</u>, 73 F.3d 1310, 1316 (4th Cir. 1996). The injury requirement is not satisfied by any type of frustrated legal claim; the prisoner must demonstrate that his nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded. <u>See</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 353 (1996). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." <u>Casey</u>, 518 U.S. at 355.

Plaintiff claims that, on March 10, 2017, Puett took personal property including legal materials that were never returned. On May 29, 2018, Hergenrother opened outgoing legal mail outside of Plaintiff's presence in violation of the inmate mail policy and procedure. Plaintiff was

refused a notary on March 2, 2018, by Amy Ward for unknown reasons.

Plaintiff fails to allege with regards to any of the foregoing incidents that the legal material at issue frustrated or impeded a nonfrivolous post-conviction or civil rights legal claim. He has therefore failed to allege actual injury and this claim will be dismissed.

## V. CONCLUSION

For the foregoing reasons, the Amended Complaint is sufficient to proceed against **Guzman, Hollingworth, Hudson, Kinzer, Lyons, McClendon, Tilley,** and the **John Doe** officer who was involved in the April 5, 2017, incident at Marion C.I., for the use of excessive force; against **Barker, Brookshire, Hergenrother, Long, Mull, Surrat, Taylor,** and **Williams** for depriving him of due process with regards to prison disciplinary proceedings; against **Brookshire, Davis, Hergenrother, Marsh, Nanney, Puett,** and **Watkins** for interfering with Plaintiff's freedom of religion; and against **Brookshire** and **Hergenrother** for interfering with the mail. The remaining Defendants and claims are dismissed for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IT IS, THEREFORE, ORDERED** that:

1. The Amended Complaint passes initial review on Plaintiff's claims of excessive force against **Guzman, Hollingworth, Hudson, Kinzer, Lyons, McClendon, Tilley,** and **John Doe**; the disciplinary due process claims against **Barker, Brookshire, Hergenrother, Long, Mull, Surrat, Taylor,** and William; the freedom of religion claims against **Brookshire, Davis, Hergenrother, Marsh, Nanney, Puett,** and **Watkins**; and the claims for interference with the mail against **Brookshire** and **Hergenrother** under 28 U.S.C. § 1915.

32

2. The remaining claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

3. **IT IS FURTHER ORDERED THAT** the Clerk is directed to commence the procedure for waiver of service as set forth in Local Rule 4.3 for Defendants **Brookshire, Davis, Hergenrother, Guzman, Hollingworth, Hudson, Kinzer, Lyons, Long, Marsh, McClendon, Mull, Nanney, Puett, Surrat, Taylor, Tilley, Watkins** and Marion C.I. Officer **John Doe** who was involved in the April 5, 2017, incident, who are current or former employees of NC DPS.[6]

Signed: August 30, 2018

Frank D. Whitney
Chief United States District Judge

---

[6] The Court previously ordered the Clerk to commence the service waiver procedure for Defendant Barker. See (Doc. No. 10).