**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL CASE NO. 1:18-cv-00090-MR**

| | |
|---|---|
| **KAYIE SHAUNE WRIGHT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **MEMORANDUM OF** |
| **vs.** ) | **DECISION AND ORDER** |
| ) | |
| **KENNETH LASSITER,** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

THIS MATTER comes before the Court on the Defendants' Motion for Summary Judgment [Doc. 64].

## I.    PROCEDURAL BACKGROUND

On April 2, 2018, the Plaintiff Kayie Shaune Wright, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 alleging the violation of his civil rights while incarcerated at the Lanesboro Correctional Institution, the Marion Correctional Institution, and the Alexander Correctional Institution.[1] [Doc. 1].   The Plaintiff's Complaint (the "Original Complaint") asserted several claims against ten different Defendants.  [Id.].

_____

[1] The Plaintiff has been transferred since he filed this action and is now incarcerated at Polk Correctional Institution in Butner, North Carolina.

On August 14, 2018, the Court conducted a frivolity review of the Original Complaint.  The Court determined that the Original Complaint only stated a cognizable due process claim against Defendant Baker and dismissed the claims against the other Defendants.  [Doc. 9].  The Court gave the Plaintiff 14 days to file a superseding Amended Complaint.  [Id. at 30].

On August 24, 2018, the Plaintiff filed an Amended Complaint.  [Doc. 13].  In his Amended Complaint, the Plaintiff asserted a variety of claims against 85 Defendants, including: Lanesboro C.I. Captain Aaron, Marion C.I. Nurse Altwel, Marion C.I. Disciplinary Hearing Officer ("DHO") Robert T. Barker, Alexander C.I. Superintendent Beaver, Alexander C.I. Unit Manager Bieker, Marion C.I. Unit Manager T. Boysworth, Marion C.I. Mailroom Staff Brookshire, Marion C.I. Captain A. Carson, Lanesboro C.I. Sergeant Clawson, Marion C.I. Superintendent H. Corpening, Marion C.I. Officer Cosby, Marion C.I. Program Director D. Cotherin, Marion C.I. Officer Davis, Alexander C.I. Assistant Superintendent Dye, Alexander C.I. Physical Therapist T. Ford, Marion C.I. Officer J. Grant, Marion C.I. Lieutenant Guzman, Marion C.I. Officer Hamby, Marion C.I. Assistant Unit Manager Hamilton, Marion C.I. Officer Hendley, Marion C.I. SRG Officer A. Hergenrother, Lanesboro C.I. Floor Officer Holder, Marion C.I. Sergeant A.

Hollingworth, Lanesboro C.I. Floor Officer Honbarrier, Marion C.I. Officer S. Hunt, Marion C.I. Program Director Ms. J. Jenkins, Marion C.I. Officer Keller, Marion C.I. Officer Kidd, Marion C.I. Officer Kizer, Marion C.I. Sergeant Kinzer, Lanesboro C.I. Sergeant Krantz, Lanesboro C.I. Sergeant Lambert, Director of Prisons Kenneth F. Lassiter, Marion C.I. SRG Captain Long, Marion C.I. Officer Lyons, Lanesboro C.I. Sergeant Mack, Marion C.I. Officer R. Marsh, Lanesboro C.I. Floor Officer McClendon, Lanesboro C.I. Officer Merriman, Marion C.I. Officer Morris, Marion C.I. DHO Randy Mull, Marion C.I. Psychiatrist Dr. Murphy, Marion C.I. IB Officer Nanney, Marion C.I. Sergeant T. Puett, Marion C.I. Captain Richards, Lanesboro C.I. Officer Smith, Lanesboro C.I. Floor Officer Snipes, Lanesboro C.I. Nurse Stewart, Marion C.I. Sergeant Stiles, Marion C.I. SRG Lieutenant C. Surrat, Marion C.I. Case Worker Suttles, Marion C.I. Program Director G. Swink, Marion C.I. SRG Sergeant Taylor, Marion C.I. Officer Tilley, Lanesboro C.I. Floor Officer Ms. Wall, Marion C.I. Notary Amy Ward, Marion C.I. Assistant Superintendent D. Watkins, Marion C.I. Nurse Welch, Lanesboro C.I. DHO Alfred Williams, Marion C.I. Assistant Unit Manager A. York, Lanesboro C.I. Sergeant Zimmerman, John Does 1-7, and Department of Public Safety Psychiatrist Jane Doe. [Id.].

On August 30, 2018, the Court conducted a frivolity review of the Plaintiff's Amended Complaint. [Doc. 14]. The Court allowed the Plaintiff to proceed on the excessive force claims against Defendants Guzman, Hollingworth, Hudson, Kinzer, Lyons, McClendon, Tilley, and John Doe;[2] the due process claims against Defendants Barker, Brookshire, Hergenrother, Long, Mull, Surrat, Taylor, and Williams; the freedom of religion claims against Defendants Brookshire, Davis, Hergenrother, Marsh, Nanney, Puett, and Watkins; and the mail interference claims against Defendants Brookshire and Hergenrother. [Id. at 32]. The Court dismissed the Plaintiff's other claims without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). [Id].

On September 7, 2018, the Plaintiff filed a "Motion for a Permanent Restraining Order and Preventive Relief." [Doc. 20]. In that Motion, the Plaintiff requested a preliminary injunction against the Defendants and asked to be transferred to Central Prison in Raleigh, North Carolina or Scotland Correctional Institution in Laurinburg, North Carolina. [Id. at 2]. On September 13, 2018, the Court denied the Plaintiff's Motion. [Doc. 21].

On October 15, 2018, the Plaintiff filed a "Motion for Notice of Reprisal" asserting additional claims against some of the Defendants based on events

---

[2] Defendant John Doe is actually two people, who have since been identified as Marion C.I. Officer Edward McFalls and Marion C.I. Officer Bradley Morris.

4

that allegedly took place on October 9, 2018. [Doc. 25]. Specifically, the Plaintiff alleged that some of the Defendants retaliated against him for filing this action by punching him and denying him medical attention. [Id.]. On October 19, 2018, the Plaintiff filed a "Motion for Permanent Restraining Order, Preventive Relief/Injunction, and Immediate 'Safety' Transfer" based on the events that allegedly took place on October 9, 2018. [Doc. 27]. On February 12, 2019, the Court entered an Order denying both Motions. [Doc. 50].

On January 7, 2019, the Plaintiff filed a Motion for Summary Judgment. [Doc. 42]. On April 12, 2019, the Plaintiff filed a "Motion for Judgment as a Matter of Law, Motion for Judgment on the Pleadings, Plaintiff's Notification of Retaliation by Respondent/Defendant 'T. Puett,' and Motion to Transfer Venue (Special Motion); and Notice of Prejudice." [Doc. 52]. On June 3, 2019, the Plaintiff filed an "Averment Motion of Default Judgment; Motion of Judgment on the Pleadings; and Judgment as a Matter of Law." [Doc. 54]. On July 15, 2019, the Court entered an Order denying these Motions. [Doc. 58].

On January 9, 2019, the Defendants filed an Answer to the Plaintiff's Amended Complaint. [Doc. 43]. Following a period of discovery, the Defendants filed a Motion for Summary Judgment on November 5, 2019.

[Doc. 64]. On December 2, 2019, the Plaintiff filed a "Declaration/Response." [Doc. 70].[3] On December 9, 2019, the Defendants notified the Court that they will not file a reply. [Doc. 71].

Having been fully briefed, this matter is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine

---

[3] The Plaintiff's "Declaration/Response" states that ""[t]he initial complaint and amended complaint filed by Plaintiff is truth." [Doc. 70 at ¶ 3]. The Plaintiff signed the "Declaration/Response" below a statement attesting that "[p]ursuant to 28 U.S.C. 1746(2), I verify under penalty of perjury that the foregoing Declaration/Response is true and correct." [Id. at 3].

6

issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party.  The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Id. at 322 n.3.  The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment.  Id. at 324.  Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" in the record.  See id.; Fed. R. Civ. P. 56(c)(1)(a).  The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party.  Anderson, 477 U.S. at 255.  "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'"  Ricci v. DeStefano, 129 S. Ct.

7

2658, 2677 (2009) (quoting <u>Matsushita v. Zenith Radio Corp</u>., 475 U.S. 574, 587 (1986)).

## III.    FACTUAL BACKGROUND[4]

On April 17, 2016, the Plaintiff was being escorted in restraints back to his cell at Lanesboro Correctional.  [Doc. 66-31 at ¶ 3; Doc. 66-43 at ¶ 3].[5] Because the Plaintiff refused to go up a flight of stairs, Defendant McLendon and two other officers carried the Plaintiff into his cell.  [Doc. 66-43 at ¶ 5]. The Plaintiff claims that Defendant McLendon slammed his head into a rail. [Doc. 13 at 19].[6]  Once the Plaintiff was in his cell, he blocked the officer's attempts to close his cell door.  [Doc. 66-31 at ¶ 6; Doc. 66-43 at ¶ 6]. Defendant McLendon and another officer attempted to move the Plaintiff so the door could be closed.  [<u>Id</u>.].  Defendant Hodgson arrived to assist.  [<u>Id</u>. at

---

[4] At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party."  <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).  This summary of facts is presented for the analysis of the Defendants' Motion for Summary Judgment, so the facts are viewed in the light most favorable to the Plaintiff.

[5] The April 17, 2016 incident was captured on video, which has been submitted to the Court.  [Doc. 66-32; Doc. 69].

[6] The Defendants have presented an affidavit from Correctional Officer Keisha Wall, who testified that neither Defendant McLendon nor any other officer slammed the Plaintiff's head into a railing.  [Doc. 66-43 at ¶ 5].

¶ 8].  The Plaintiff claims that Defendant Hodgson kicked him in his stomach while he was helping the other officers close the cell door.  [Doc. 13 at 19].[7]

Defendant Williams was assigned to hear the disciplinary charges against the Plaintiff from the incident on April 17, 2016.  [Doc. 13 at 19].  The Plaintiff claims that Jonnie Allen, a fellow prisoner, witnessed the incident and wanted to write a statement on his behalf.  [Id].  Defendant Williams, however, refused to call Allen as a witness or obtain a statement from him.  [Id.].

On December 22, 2016, Defendant Watkins forced the Plaintiff to sign a form stating that he wanted to be removed from a vegan diet.  [Doc. 13 at 23].  The Plaintiff claims that Defendant Watkins' actions forced him to violate his religion by making him eat meat and processed foods.  [Id.].

On March 10, 2017, Defendant Puett took several items from the Plaintiff, including some "religious items."  [Doc. 13 at 20].  The Plaintiff refused to sign a form when his property was returned because the religious items were missing.  [Id.].  The Plaintiff claims that he wanted to appeal the

---

[7] Defendants Hodgson, McLendon, and Officer Wall have presented affidavits denying that Defendant Hodgson kicked the Plaintiff in his stomach.  [Doc. 66-31 at ¶ 10; Doc. 66-43 at ¶ 10; Doc. 66-24 at ¶ 7].

refusal to return his religious items, but Defendant Brookshire would not let him.  [Id. at 21].[8]

On April 5, 2017, the Plaintiff refused to go to restrictive housing.  [Doc. 13 at 21].[9]   A cell extraction team consisting of Defendant McFalls, Defendant Hollingworth, Defendant Morris, and three other officers came to the Plaintiff's cell to move him to restrictive housing.  [Doc. 66-25 at ¶ 4]. After the Plaintiff refused orders to submit to restraints, one of the officers deployed pepper spray into the Plaintiff's cell.  [Id. at ¶ 8].  The Plaintiff used his body to block the pepper spray.  [Id.].  Defendant Morris then used a battering ram to move the Plaintiff away from the door so that the pepper spray could enter the cell.  [Id. at ¶ 9].  The Plaintiff claims that Defendant Morris hit him "in the urethra area."  [Doc. 70 at 1].[10]  After the pepper spray was deployed, the Plaintiff submitted to restraints.  [Doc. 66-25 at ¶ 11].  The extraction team removed the Plaintiff from his cell and the Plaintiff started resisting again.  [Id. at ¶ 13].   Defendant Morris applied the bent wrist

---

[8] The evidence submitted by the Defendants, however, shows that the Plaintiff ultimately filed a grievance regarding the loss of his property.  [Doc. 66-11].

[9] The April 5, 2017 incident was captured on video, which has been submitted to the Court.  [Doc. 66-28; Doc. 69].

[10] Defendant Hollingworth presented an affidavit that testified that that Defendant Morris never hit the Plaintiff in the urethra.  [Doc. 66-25 at ¶ 10].

10

technique to stop the Plaintiff's resistance.  [Id. at 12].  The Plaintiff kept resisting.  [Id. at ¶ 13].  The extraction team then placed the Plaintiff on the ground to regain control of him.  [Id.].  Because the Plaintiff continued resisting, Defendant McFalls used the electronic shield on the Plaintiff's head.  [Doc. 70 at 2].[11]  After the shield was applied, the Plaintiff stopped resisting and was escorted to a shower to wash off the pepper spray.  [Id. at ¶ 15].

Defendant Barker was assigned to hear the disciplinary charges against the Plaintiff from the April 5, 2017 incident.  [Doc. 66-1 at ¶ 4].  Under the North Carolina Department of Public Safety's policies, an inmate must request to provide a statement, designate witnesses, or request that evidence be gathered.  [Id. at ¶¶ 5-6].  The Plaintiff never made such a request.  [Id. at ¶ 6].  As such, Defendant Barker determined that the Plaintiff waived his right to present witnesses or have witnesses make a statement at the hearing.  [Id.].  Defendant Barker found the Plaintiff guilty of the charges and imposed various consequences, including 60 days of Restrictive Housing for Disciplinary Purposes ("RHDP"), 80 hours of extra duties, 180 days of suspended canteen privileges, 60 days of suspended

---

[11] Defendants Hollingworth and McFalls presented affidavits that testified that Defendant McFalls applied the electronic shield to the Plaintiff's shoulders.  [Doc. 66-25 at 2; Doc. 66-30 at 3].

visitation privileges, and 6 months of suspended draws. [Doc. 66-3]. The Plaintiff alleges that he wanted to appeal Defendant Barker's decision, but that Defendants Hergenrother, Taylor, Surrat, Long, and Brookshire refused to let him submit an appeal. [Doc. 13 at 22].

On June 7, 2017, the Plaintiff was in restraints and was being escorted to his cell by Defendant Lyons. [Doc. 66-22 at ¶ 10].[12] As the Plaintiff and Defendant Lyons passed Defendant Tilley, the Plaintiff slipped his hand out of his restraints and punched Defendant Tilley in the face. [Doc. 66-29 at ¶ 3; Doc. 66-42 at ¶ 3]. Defendant Lyons attempted to regain control over the Plaintiff, who continued to strike Defendant Tilley. [Id.]. Defendant Guzman arrived and deployed pepper spray on the Plaintiff. [Doc. 66-22 at ¶ 4]. After other officers arrived to assist, the Plaintiff was restrained and taken to a shower to wash off the pepper spray. [Id. at ¶¶ 4-5]. The Plaintiff claims that Defendants Guzman, Kinzer, Lyons, and Tilley pulled his hair, kicked him, and sprayed mace on him during the altercation. [Doc. 13 at 22].

On March 3, 2018, Defendants Davis, Nanney, and Marsh went into the Plaintiff's cell and threw away his property, including a religious necklace. [Id. at 24].

---

[12] The June 7, 2017 incident was captured on video, which has been submitted to the Court. [Doc. 66-23; Doc. 69].

On May 29, 2018, Defendant Hergenrother opened mail from the Plaintiff that was marked confidential. [Id.]. On June 6, 2018, the Plaintiff mailed out statements associated with what the Department of Public Safety considers a "Security Risk Group." [Doc. 66-34 at ¶ 7]. The Plaintiff was charged with disciplinary offenses for misusing the mail and for participating in activity or behavior associated with a Security Risk Group. [Doc. 66-35 at 1]. Defendant Mull was assigned to hear the disciplinary charges against the Plaintiff from his use of the mail. [Doc. 66-34 at ¶ 6]. The Plaintiff requested statements and live testimony from several state employees, including the Director of Prisons and the Governor. [Id. at ¶ 10]. Defendant Mull claims he did not gather statements or request live testimony from those individuals because there was no reason to believe they had factual knowledge of the incident. [Id.]. Defendant Mull found the Plaintiff guilty of the charges related to his misuse of the mail and imposed 30 days of RHDP, 80 hours of extra duties, 90 days of suspended canteen privileges, 30 days of suspended radio privileges, and 3 months of suspended draws. [Doc. 66-36 at 3-4].

## IV.  DISCUSSION

### A.  Sovereign Immunity

The Plaintiff brings his claims against each Defendant in their official

and individual capacities.  [Doc. 13; Doc. 14].  All the Defendants move for summary judgment on the Plaintiff's official capacity claims, arguing that such claims are barred by the Eleventh Amendment.  [Doc. 65 at 22].

A suit against a state official in his official capacity is construed as against the state itself.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  It is well settled that neither a state nor its officials acting in their official capacities are "persons" subject to suit under 42 U.S.C. § 1983. Id.; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978).  Moreover, the Eleventh Amendment generally bars lawsuits by citizens against non-consenting states brought either in state or federal courts. See Alden v. Maine, 527 U.S. 706, 712-13 (1999); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996).

Although Congress may abrogate the states' sovereign immunity, it has not chosen to do so for claims under 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 343 (1979).  Likewise, North Carolina has not waived its sovereign immunity by consenting to be sued in federal court for claims brought under 42 U.S.C. § 1983. See generally Mary's House, Inc. v. North Carolina, 976 F. Supp. 2d 691, 697 (M.D.N.C. 2013) (claim under 42 U.S.C. § 1983 barred by sovereign immunity of North Carolina).  As such, the Plaintiff cannot bring claims against the Defendants in their official

capacities.  Therefore, the Defendants' Motion for Summary Judgment on those claims will be granted.

### B.    Excessive Force Claims

The Plaintiff brings excessive force claims against Defendants McLendon, Hodgson, Morris, Hollingworth, McFalls, Guzman, Kinzer, Lyons, and Tilley.  [Doc. 13; Doc. 14].  Those Defendants move for summary judgment on the grounds that excessive force was never used.  [Doc. 65 at 11-16].

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain on prisoners.  Hill v. Crum, 727 F.3d 312, 317 (4th Cir. 2013).  "An inmate's Eighth Amendment excessive force claim involves both an objective and a subjective component."  Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019).  "The objective component asks whether the force applied was sufficiently serious to establish a cause of action."  Id. The subjective component "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Id. at 112-13.  The test for evaluating whether officers acted maliciously or wantonly considers (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably

perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response.  Thompson v. Virginia, 878 F.3d 89, 99 (4th Cir. 2017) (citation omitted).

### 1.    April 17, 2016

While the Plaintiff claims that the Defendant McLendon slammed his head into a rail and that Defendant Hodgson kicked him on April 17, 2016, the Court's review of the video footage from that date shows that Defendant McLendon never slammed the Plaintiff's head into a railing and Defendant Hodgson never kicked him during the alleged incident.  Instead, Defendant McLendon, Defendant Hodgson, and other officers used reasonable and appropriate force to overcome the Plaintiff's resistance and place him in his cell.  Based on that forecast of evidence, no reasonable jury could find that Defendant McLendon or Defendant Hodgson used excessive force. Accordingly, Defendant McLendon and Defendant Hodgson's Motion for Summary Judgment will be granted as to the Plaintiff's excessive force claims based on the events of April 17, 2016.

### 2.    April 5, 2017

The Plaintiff claims that Defendant Morris hit him "in the urethra area" when the Plaintiff was removed from his cell extraction team on April 5, 2017. [Doc. 70 at 1].  The Court's review of the video footage, however, shows that

Defendant Morris used a battering ram to move the Plaintiff because he was blocking the deployment of pepper spray into his cell. To the extent that the Plaintiff was struck in the pelvic area by Defendant Morris, that use of force was necessary because the Plaintiff was using his pelvic area to block the opening into his cell and prevent the use of pepper spray. As such, no reasonable jury could find that Defendant Morris used excessive force on April 5, 2017.

The Plaintiff further claims that Defendant Hollingworth threw him on the floor on April 5, 2017. [Doc. 13 at 20]. The Court's review of the video footage from that date shows that the Plaintiff was not cooperating with officers while they were escorting him from his cell. Because of the Plaintiff's resistance, Defendant Hollingworth instructed the officers to take the Plaintiff to the ground. Based on the Court's review of the evidence, no reasonable jury could conclude that Defendant Hollingworth threw the Plaintiff to the floor or that his application of force was sufficiently serious to support an excessive force charge. Brooks, 924 F.3d at 112. As such, no reasonable jury could find that Defendant Hollingworth used excessive force on April 5, 2017.

The Plaintiff also claims that Defendant McFalls shocked him with an electronic shield on April 5, 2017. [Doc. 13 at 20]. The Court's review of the

video footage shows that Defendant McFalls told the Plaintiff that the electronic shield would be deployed if he resisted the officers who were escorting him from his cell.  Despite that warning, the Plaintiff resisted the officers and continued resisting after Defendant Hollingworth told the officers to put him on the ground.  Defendant McFalls deployed the electronic shield to stop the Plaintiff's resistance.   That use of force was insufficiently malicious or wanton to support an excessive force claim because it was necessary and proportionate to the risk posed by the Plaintiff's resistance.  <u>Thompson</u>, 878 F.3d at 99.  As such, no reasonable jury could find that Defendant McFalls used excessive force.

For all these reasons, Defendants Morris, Hollingworth, and McFalls' Motion for Summary Judgment on the Plaintiff's excessive force claims related to the events of April 5, 2017 will be granted.

### 3.    June 7, 2017

While the Plaintiff claims that Defendants Guzman, Kinzer, Lyons, and Tilley assaulted him by pulling his hair and kicking him, the Court's review of the video footage from that date shows that no officer pulled the Plaintiff's hair or kicked him.  Instead, the Plaintiff assaulted Defendant Tilley and had to be physically restrained by several other officers to stop his assault. Although Defendant Guzman used pepper spray on the Plaintiff, that use of

force was necessary and proportionate to the risk posed by the Plaintiff, who had just assaulted an officer and was resisting other officers' attempts to stop the assault. Thompson, 878 F.3d at 99. As such, no reasonable jury could find that Defendants Guzman, Kinzer, Lyons, or Tilley used excessive force. Accordingly, Defendants Guzman, Kinzer, Lyons, or Tilley's Motion for Summary Judgment on the Plaintiff's excessive force claims related to the events of June 7, 2017 will be granted.

## C. Due Process Claims

The Plaintiff brings due process claims against Defendants Barker, Brookshire, Hergenrother, Long, Mull, Surrat, Taylor, and Williams. [Doc. 13; Doc. 14]. Those Defendants, other than Defendant Williams, move for summary judgment on the grounds that the Plaintiff cannot show that his liberty interests were implicated by the disciplinary proceedings at issue. [Doc. 65 at 17-21].

Defense counsel states that Defendant Williams does not move for summary judgment on the due process claim against him because he claims he was never served with the Complaint. [Doc. 65 at 1 n.1]. Pursuant to Federal Rule of Civil Procedure 4(m), the Plaintiff will have 30 days from the entry of this Order to either show good cause for the failure to serve Defendant Williams or to serve Defendant Williams. Failure to do so will

result in the dismissal of the due process claim against Defendant Williams.

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. "A prisoner claiming a violation of his right to procedural due process must show: (1) that there is a 'state statute, regulation, or policy [that] creates such a liberty interest,' and (2) that 'the denial of such an interest imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Martin v. Duffy, 858 F.3d 239, 253 (4th Cir. 2017) (quoting Prieto v. Clarke, 780 F.3d 245, 248-49 (4th Cir. 2015)). "Whether confinement conditions are atypical and substantially harsh 'in relation to the ordinary incidents of prison life' is a 'necessarily . . . fact specific' comparative exercise." Incumaa v. Stirling, 791 F.3d 517, 527 (4th Cir. 2015) (alteration in original) (quoting Beverati v. Smith, 120 F.3d 500, 502–03 (4th Cir. 1997)).

The Plaintiff alleges that Defendants Barker, and Mull refused to call witnesses during disciplinary hearings, and Defendants Hergenrother, Taylor, Surrat, Long, and Brookshire refused to let him appeal rulings from disciplinary hearings. [Doc. 13 at 19, 21-22, 24]. As a result of those hearings, the Plaintiff had his canteen, telephone, visitation, and trust fund withdrawal privileges suspended, was assigned extra duty time, and was

temporarily reassigned to RHDP.  [Doc. 66-3; Doc. 66-36].

"[T]emporary suspension of privileges does not implicate a constitutionally protected liberty or property interests."  Locke v. Solomon, No. 3:17-CV-00337-FDW, 2018 WL 5636164, at *3 (W.D.N.C. Oct. 31, 2018) (citation omitted), appeal dismissed sub nom. Locke v. Carver, 770 F. App'x 71 (4th Cir. 2019).  Likewise, assignment of extra duty does implicate liberty interests because it does not constitute an atypical and significant hardship. Samford v. Staples, 249 Fed App'x. 1001, 1004 (5th Cir. 2007).  As such, the suspension of privileges and the assignment of extra duty do not implicate the Plaintiff's liberty interests.

With regard to the reassignments to RHDP, a "plaintiff does not have a federally protected liberty interest in any particular housing or classification unless it exceeds the scope of his original sentence and imposes an atypical and significant hardship in relation to the ordinary incidents of prison life." McNeill v. Johnson, No. 3:18-CV-188-FDW, 2020 WL 534196, at *8 (W.D.N.C. Feb. 3, 2020) (citing Sandin v. Conner, 515 U.S. 472, 484 (1995); Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) (en banc) ("[C]hanges in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation) and the denial of privileges . . . are necessarily functions of prison management that must be

left to the broad discretion of prison administrators to enable them to manage prisons safely and efficiently.")).  The forecast of evidence shows that the Plaintiff's reassignments to RHDP were temporary and did not affect the duration of his sentence.  [Doc. 66-3; 66-36].  The forecast of evidence further shows that RHDP is not significantly more onerous than close custody general population at Marion Correctional Institution.  [Doc. 66-38].  As such, the Plaintiff's reassignments to RHDP were not atypical and significant hardships that implicate liberty interests.  Incumaa, 791 F.3d at 531 (holding that administrative segregation from the general population does not implicate a protected liberty interest absent a showing of specific facts that conditions of confinement are significantly more onerous).  Accordingly, the reassignments to RHDP cannot constitute grounds for a due process claim. Because the Plaintiff fails to allege that his liberty interests were implicated by the alleged due process deprivations, Defendants Barker, Brookshire, Hergenrother, Long, Mull, Surrat, and Taylor's Motion for Summary Judgment will be granted as to the due process claims against them.

### D.    Mail Interference Claims

The Plaintiff brings mail interference claims against Defendant Hergenrother and Brookshire.  [Doc. 13 at 21, 24].  The Plaintiff asserts that on May 29, 2018, Defendant Hergenrother opened his outgoing legal mail

and that Defendant Brookshire was working in the mailroom and denied the Plaintiff's request for a religious item on or before June 5, 2017. [Id.]. Defendants Hergenrother and Brookshire move for summary judgment solely on the grounds that the Plaintiff has failed to exhaust his administrative remedies on those claims. [Doc. 65 at 10-11].

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(a). In Jones v. Bock, 549 U.S. 199 (2007), the Supreme Court stated that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Id. at 211 (citing Porter, 534 U.S. at 524). The exhaustion of administrative remedies must occur before a civil action is commenced. Porter v. Nussle, 534 U.S. 516 (2002). For example, a prisoner may not exhaust his administrative remedies during the pendency of a Section 1983 action. See Germain v. Shearin, 653 Fed. Appx. 231, 234 (4th Cir. 2016); French v. Warden, 442 F. App'x 845, 846 (4th Cir. 2011). As such, a plaintiff cannot cure an original failure to exhaust administrative remedies by exhausting administrative remedies after the action was filed and then filing an amended complaint. Ahmed v. Dragovich,

297 F.3d 201, 209 (3d Cir. 2002).  If, however, new claims arise after an original complaint is filed, those claims are not subject to dismissal for failure to exhaust administrative remedies if the plaintiff exhausts his administrative remedies on those claims and then includes them in an amended complaint. Kessler v. Vaughn, No. 1:15CV735 (GBL/JFA), 2016 WL 7238810, at *6 (E.D. Va. Dec. 13, 2016) (citing Malouf v. Turner, 814 F. Supp. 2d 454, 456 (D.N.J. 2011)); see also Rhodes v. Robinson, 621 F.3d 1002, 1006 (9th Cir. 2010) (PLRA's exhaustion requirement was satisfied for new claims raised in amended complaint which arose after original complaint was filed where administrative remedies for new claims were exhausted before the amended complaint was filed).

In Anderson v. XYZ Correctional Health Servs., 407 F.3d 674, 683 (4th Cir. 2005), the Fourth Circuit held that:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

The Defendants provide an affidavit from Kimberly Grande, the Executive Director of the North Carolina Department of Public Safety's

Inmate Grievance Board, detailing the Plaintiff's grievances and attaching copies of those grievances. [Doc. 66-4; Docs. 66-6 through 66-19]. According to Grande's Affidavit, the Plaintiff exhausted his administrative remedies on twelve grievances between April 1, 2016, and April 4, 2018. [Doc. 66-4 at 2-4].

None of the grievances documented in Grande's Affidavit presented a mail interference claim against Defendant Brookshire. [Docs. 66-6 through 66-19]. The Plaintiff does not submit any evidence to show that he exhausted his administrative remedies on that claim. As such, there is no genuine issue of material fact as to whether the Plaintiff has exhausted his administrative remedies on that claim. Jones v. Bock, 549 U.S. 199, 211 (2007). Accordingly, Defendants' Brookshire's Motion for Summary Judgment will be granted and the Plaintiff's mail interference claim against him will be dismissed without prejudice. Dillard v. Anderson, No. 2:13-CV-31-FDW, 2010 WL 9553022, at *2 n.2 (W.D.N.C. Sept. 6, 2010) (Whitney, C.J.). ("A dismissal for failure to exhaust administrative remedies is without prejudice.").

The Plaintiff's mail interference claim against Defendant Hergenrother, however, arose on May 29, 2018, after the Plaintiff filed his Original Complaint on April 2, 2018 and before he filed his Amended Complaint on

August 24, 2018.  As such, that claim can survive Defendant Hergenrother's Motion for Summary Judgment if the Plaintiff exhausted his administrative remedies before August 24, 2018.  Kessler, 2016 WL 7238810, at *6 (citing Malouf, 814 F. Supp. 2d at 456); see also Rhodes, 621 F.3d at 1006 (PLRA's exhaustion requirement was satisfied for new claims raised in amended complaint which arose after original complaint was filed where administrative remedies for new claims were exhausted before the amended complaint was filed).  Grande's Affidavit, however, only details the grievances filed by the Plaintiff between April 1, 2016 and April 4, 2018.  [Doc. 66-4 at 2-4].  Defendant Hergenrother does not offer any other forecast of evidence to show whether the Plaintiff exhausted his administrative remedies between April 4, 2018 and the filing of his Amended Complaint on August 24, 2018.  As such, Defendant Hergenrother has failed to carry his burden to show that the Plaintiff failed to exhaust his administrative remedies on that claim.  Anderson, 407 F.3d at 683.  Accordingly, Defendant Hergenrother's Motion for Summary Judgment on the Plaintiff's mail interference claim will be denied.

### E.    Religious Exercise Claims

The Plaintiff brings religious exercise claims against Defendants Brookshire, Davis, Hergenrother, Marsh, Nanney, Puett, and Watkins.  [Doc.

13 at 20-23]. Defendants Brookshire, Davis, Hergenrother, Marsh, Nanney, Puett, and Watkins move for summary judgment on the grounds that the Plaintiff failed to exhaust his administrative remedies on those claims. [Doc. 65 at 10-11, 17]. Defendant Puett also moves for summary judgment on the grounds that the Plaintiff's religious exercise claim against her is more properly cast as a conversion claim and the Plaintiff has not exercised the state remedy that is available for that conversion claim. [Id. at 16-17].

The religious exercise claims against Defendants Brookshire, Davis, Hergenrother, Marsh, Nanney, and Watkins all arose before the Plaintiff filed his Original Complaint on April 2, 2018. As such, the Plaintiff had to exhaust his administrative remedies on those claims before that date. Ahmed, 297 F.3d at 209. As detailed in Grande's Affidavit, however, the Plaintiff failed to exhaust his administrative remedies on those claims before he commenced this action on April 2, 2018. [Doc. 66-4]. The Plaintiff has failed to present any evidence to otherwise show that he exhausted his administrative remedies with regard to those claims. As such, there is no genuine issue of material fact as to whether the Plaintiff has exhausted his administrative remedies with regard to those claims. Jones, 549 U.S. at 211. Accordingly, Defendants' Brookshire, Davis, Hergenrother, Marsh, Nanney, and Watkins' Motion for Summary Judgment will be granted and the Plaintiff's religious

exercise claims against them will be dismissed without prejudice.  <u>Dillard</u>, 2010 WL 9553022, at *2 n.2.

With regard to the religious exercise claims against Defendant Puett, the Plaintiff filed a grievance alleging that Defendant Puett took his possessions from him, including two "Rasta hats" and religious items.  [Doc 66-11 at 2].  The Plaintiff exhausted his administrative remedies on that grievance on May 19, 2017. [Doc. 66-11 at 1].  As such, the forecast of evidence shows that the Plaintiff exhausted his administrative remedies on that claim before filing this action.

While Defendant Puett is correct that those allegations could potentially support a claim for conversion, the Plaintiff casts this as a religious exercise claim.  [Doc. 13 at 20 (stating that "Plaintiff [has a] strong belief and participation in the sincere 'Rastafarian Faith' and therefore can have his crowns and rasta books."].[13]  Because the Plaintiff's brings a religious exercise claim, he did not need to exhaust a state remedy.  As such, Defendant Puett's Motion for Summary Judgment on the religious exercise claim against her will be denied.

---

[13] The Court also has previously construed the Plaintiff's allegations as presenting a religious exercise claim.  [Doc. 14 at 30].

## V. CONCLUSION

For all these reasons, the Defendants' Motion for Summary Judgment will be granted in part and denied in part as follows. The Motion will be granted as to the due process claims against Defendants Barker, Brookshire, Hergenrother, Long, Mull, Surrat, and Taylor and the excessive force claims against Defendants McLendon, Hodgson, Morris, Hollingworth, McFalls, Guzman, Kinzer, Lyons, and Tilley. Those claims will be dismissed with prejudice. The Motion will be further granted as to the religious exercise claims against Defendants Brookshire, Davis, Hergenrother, Marsh, Nanney, and Watkins and the mail interference claim against Defendant Brookshire. Those claims will be dismissed without prejudice. The Motion will be denied as to the mail interference claim against Defendant Hergenrother and the religious exercise claim against Defendant Puett.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 64] is hereby **GRANTED IN PART** and **DENIED IN PART** as follows:

(1)    The Motion is **GRANTED** with respect to the due process claims against Defendants Barker, Brookshire, Hergenrother, Long, Mull, Surrat, and Taylor and the excessive force claims against

Defendants McLendon, Hodgson, Morris, Hollingworth, McFalls, Guzman, Kinzer, Lyons, and Tilley and those claims are **DISMISSED WITH PREJUDICE**;

(2)     The Motion is **GRANTED** with respect to the mail interference claim against Defendant Brookshire and the religious exercise claims against Defendants Brookshire, Davis, Hergenrother, Marsh, Nanney, and Watkins and those claims are **DISMISSED WITHOUT PREJUDICE**;

(3)     The Motion is **DENIED** with respect to the mail interference claim against Defendant Hergenrother and the religious exercise claim against Defendant Puett.

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 4(m), the Plaintiff shall have thirty (30) days from the entry of this Order to either serve Defendant Williams or provide good cause for his failure to do so.

**IT IS SO ORDERED.**

Signed: August 12, 2020

Martin Reidinger
Chief United States District Judge